Fincher G. Bobo v. Board of Levee Commissioners for Yazoo-Mississippi Delta.

[46 South., 819.]

1. STATUTES. *Construction. Clerical error. Not.*

When a sensible construction cannot otherwise be given a legislative enactment and the context clearly demands so doing, the courts are warranted in treating the word "not" as having been written in a statute by clerical error.

2. COURTS. *Jurisdiction. Policy of law.*

The supreme court is without power and will not pass upon the wisdom or policy of a statute, even where its constitutionality is involved.

3. CONSTITUTIONAL LAW. *Constitution 1890, sec. 234. Levees. Laws 1908, ch. 97.*

Constitution 1890, sec. 234, providing for the publication of bills affecting certain levee matters before their passage by the legislature, contemplates laws diminishing or increasing the amount of levee revenue and has no application to Laws 1908, ch. 97, changing the mode of administering the affairs of the Yazoo-Mississippi Delta board.

4. STATUTES. *Penal provisions. Construction.*

The rule requiring penal statutes to be strictly construed does not prevent the courts from looking to the mischief intended to be prevented or from considering the character of the remedy proposed, and the mere letter of a legislative enactment must yield to its spirit, although the statute be penal.

5. SAME. *Title. Laws 1908, ch. 97.*

The title to Laws 1908, ch. 97, regulating the procedure of the Yazoo-Mississippi Delta Levee Board, is not objectionable.

6. CONSTITUTIONAL LAW. *Laws 1908, ch. 97. Due process of law. Right to contract. Constitution 1890, sec. 14. Ib., sec. 16.*

Laws 1908, ch. 97, regulating the procedure of the Yazoo-Mississippi Delta Levee Board, is not unconstitutional; it does not violate:
(a) Constitution 1890, sec. 14, providing that no person shall be deprived of life, liberty, or property except by due process of law, nor
(b) Any section of the constitution, relating to contracts.

7. Levees. *Board. Bonds. Collaterals. Laws* 1908, *ch.* 97, § 3. *Power of treasurer.*

 The treasurer of the Yazoo-Mississippi Delta Levee Board has no authority, under Laws 1908, ch. 97, § 3, giving power in the premises, to declare the forfeiture of bonds, deposited with him or to sell them for other than purposes of collateral security.

From the chancery court of, second district, Coahoma county. Hon. M. E. Denton, Chancellor.

Bobo, appellant, was complainant in the court below, and the board of levee commissioners of the Yazoo-Mississippi Delta, appellee, was defendant there. From a decree dissolving an injunction complainant appealed to the supreme court. The facts are stated in the opinion of the court.

*J. W. Cutrer,* for appellant.

The act was not published as required by sec. 234 of our state constitution, hence is unconstitutional. That it should have been so published is evident, since it affects the taxation and the revenue of the levee board. The language of sec. 234 of the constitution is plain and unambiguous, was mandatory upon the legislature, and should have been obeyed. 8 Cyc., 762; *Pollock* v. *Farmers' Trust Co.,* 158 U. S., 617; *Newell* v. *People,* 7 N. Y. Ct. App., 84; *Beck* v. *Allen,* 58 Miss., 177. This court, in construing sec. 234 of the constitution, held that relief to a person injuriously affected by an undue extension of levee boundaries could be had only in the manner provided by the section, and that by its terms even the legislature was prohibited from any consideration of change of boundary of the levee districts except upon four weeks' previous publication of the proposed bill. *Smith* v. *Willis,* 78 Miss., 243, 28 South., 878. See also *Green* v. *Robinson,* 5 How. (Miss.), 80, 100, approved in *Brien* v. *Williamson,* 7 How. (Miss.), 14.

There can be no question that in its practical workings and operation the act in question affects the revenue of the levee disstrict. *Newell* v. *People, supra.* And it seeks to divert the taxes collected, and collectible for levee purposes, from the chan-

nel marked out by the constitution. Sec. 234 of the constitution contains the mandatory requirement that the taxes, derived under the provisions of sec. 236, shall be paid into the treasury of the appellee. It was never considered by the framers of our constitution that there would be a peripatetic treasurer of the board, or that a dozen different persons would be at the same time authorized to perform any or all of the functions of the treasurer's office. The word, treasury, is used in a preceding section of the constitution, and one rule of constitutional interpretation is that where a word is used in a certain sense in a preceding portion of the constitution, it will be construed as having the same sense when subsequently employed. *Epping* v. *Columbus,* 117 Ga., 263; *Green* v. *Waller,* 32 Miss., 650; 8 Cyc., 762.

The act is a highly penal statute, and must be construed *strictissimi juris.* Certain penalties are pronounced against the treasurer, the commissioners themselves, and all tax collectors and custodians of funds of appellee. Yet the language of the statute, as to methods of procedure, duties of officers and disposition of funds, is so vague that the board and its agents cannot with certainty know whether in attempting to carry out its provisions, they are acting within its requirements.

The act fails in its title and in the subject matter to describe appellee as a corporation existing under the laws of the state. Unless the title is such as to leave it unquestionable that the subject matter of this legislation was intended to apply to the appellee, and to no other association or corporation, the act is bad. *People ex rel. Howe,* 177 N. Y., 499; *Henderson* v. *Ins. Co.,* 20 L. R. A., 827; Ordronaux' Const. Leg., 590; *Dixon* v. *Poe,* 60 L. R. A., 308; *Clark* v. *Board of Comm.,* 54 Kas., 634; *Ham* v. *Levee Com'rs,* 83 Miss., 557, 35 South., 943.

The title and the subject matter of the act do not in terms refer to and include appellee. The title of the act, and, accordingly, the act itself must be held defective. *Sykes* v.

*People,* 132 Ill., 32; *Griswold* v. *Sedgwick,* 6 Cowan (N. Y.), 455; *Commonwealth* v. *Perkins,* 1 Pick. (Mass.), 388; *Bates* v. *State Bank,* 46 Am. Dec., 294; *Clark* v. *Hills,* 34 N. E., 13; *Thompson* v. *McCorkle,* 34 N. E., 813.

The act is bad, because it seeks to deprive the appellee of its property without due process of law, and to deny to appellee the right to contract with reference to its property, property-rights and franchises. There is a general impression among many legislators that the state can deal with its subordinate governmental corporations and their property according to its pleasure; that these corporations can be abolished at will and their property disposed of at any time by act of the legislature. This is an incorrect conception. *People ex rel. Leroy* v. *Hurl-but,* 24 Mich., 44; *Gemmer* v. *State,* 66 L. R. A., 82. The appellee and other bodies of like creation are separate and distinct corporations, having property rights under the constitution which must be protected, and of which they cannot be deprived without due process of law. *Dartmouth College* v. *Woodward,* 4 Wheat., 518; *People* v. *Murray,* 149 N. Y., 367; *Lowell* v. *Boston,* 111 Mass., 454; *Allen* v. *Jay,* 60 Me., 124; *State* v. *Foley,* 30 Minn., 350; *Grogan* v. *San Francisco,* 18 Cal., 590; *Re Mahon,* 171 N. Y., 263; *Bush* v. *Orange Co.,* 159 N. Y., 212. The discretion of the legislature, with reference to the use or possession or handling of funds and property of municipalities and of bodies of the same character as appellee, is not absolute, but is clearly restricted by the constitution. *People* v. *Detroit,* 28 Mich., 228.

Where a corporation, such as is appellee, is created for the benefit of an individual community, no matter how extended the community may be, the possession of property, the acquisition of rights and the administration of affairs, of the corporation, must be based and maintained solely upon the footing of private corporations; and such rights cannot be taken away without due process of law. Whenever property shall have

been acquired by the corporation, whether it be personalty or realty, stocks, bonds or money, the property thus actually ac-·quired, though acquired through legislative permission, belongs to the corporation for its private purposes, as for instance in this case, to do everything necessary to maintain a levee system and pay outstanding debts.     Such a corporation is the constitu-·ent of state government, and is entitled to the full protection of the law as to its property.     *Kellyville Coal Co.* v. *Harrier,* 69 N. E., 470; *State* v. *Robbins,* 73 N. E., 470.     The right to contract is one of the inalienable rights of corporations as well as of individuals, and any deprivation of such right is a depri-vation of property right.     *Ritchie* v. *People,* 29 L. R. A., 79; *Marshall* v. *Nashville,* 109 Tenn., 495.     For the same reason also, the legislature cannot direct what contracts corporations shall make, or what disposition they shall make of their funds. *Helena Consolidated Water Co.* v. *Steele,* 37 L. R. A., 412; *Re Brooklyn Ass'n,* 60 N. Y. Ct. App., 399; *People* v. *Batchelor,* 53 N. Y., 128; *Simon* v. *Northrup,* 30 L. R. A., 171; *People* v. *Chicago,* 2 Am. Rep., 278.

This state has placed itself in line with the current of au-thorities in this matter by holding that amounts recovered by way of taxes or as revenue by municipalities cannot be con-trolled by legislative enactment, nor can the legislature inter-fere with the discretionary power vested in such corporations. *Aberdeen* v. *Sanderson,* 8 Smed. & M., 663.     To the same effect is *Aberdeen Academy* v. *Aberdeen,* 13 Smed. & M., 645, where the legislature sought to direct the authorities of the town of Aberdeen to devote certain funds to the purpose of establishing and maintaining a certain public academy; the court holding that the legislature may take away the franchise of the munici-pality and abolish it entirely, but, if the municipality be per-mitted to continue to exist and to collect taxes, the disposition of such property of the municipality rested in the municipality.

By the third section of the act, the treasurer of the appellee

is required to deposit in the bank named by appellee, all of its funds without compensation paid to appellee for the use of such funds, and the treasurer is required to keep the funds in such bank at all times "except when drawn in regular course of business. This is in derogation of the discretionary rights and powers of appellee to control its own affairs and to handle its funds vested in it by the state constitution. *State* v. *Robbins,* 73 N. E., 470; *Kellyville Coal Co.* v. *Harrier,* 69 N. E., 927. The legislature cannot require the appellee, a corporation, to lend its money or place the same on deposit with another corporation, or designate what kind of security shall be taken by appellee as collateral. *Bowdoingham* v. *Richmond,* 19 Am. Dec., 197; *People* v. *Bachelor,* 53 N. Y., 128, 13 Am. Rep., 480; *Marine Bank* v. *Fulton Bank,* 69 U. S., 256; *State* v. *Bartley,* 23 L. R. A., 67. If any depository should become insolvent, there is no power vested in appellee, in the act, to declare the office filled by such depository vacant and to elect or appoint a successor, nor is there power in appellee to stop the payment of further funds over to such insolvent depository. The act, in its actual requirements, will create a relationship of debtor and creditor between the different banks made depositories and appellee, which must of necessity be accompanied by great risks. As the officers of appellee are required to give bond for faithful performance of their trusts, and as the penalties mentioned in the act are severe, the operation of the act will be a great hardship on appellee.

The statute requires that the office of a depository shall be filled by, and only by, a bank or trust company having capital stock. The statute is therefore unconstitutional in that it discriminates illegally against all other parties and against citizens and taxpayers and in favor of banks and trust companies within a certain designated locality. The spirit of the constitution requires that all persons holding office or performing any employment for the public must be, not corporations, but

individuals. Constitution, secs. 250, 267; *Monette* v. *State,* 91 Miss., 662, 44 South., 989; *Ellis* v. *Greaves,* 82 Miss., 36, 34 South., 81.

*F. A. Montgomery,* for appellee.

Where an act is susceptible of two constructions, one of which will render it unconstitutional, while the other will give it effect, that construction will be adopted which will make the statute constitutional. If there is a well founded reasonable doubt of the constitutionality of a legislative act, it must be held constitutional. 26 Am. & Eng. Ency. of Law (2d ed.), 640, 641, 642; *Fitzgerald* v. *Rees,* 17 Miss., 473, 7 South., 341; *Richard* v. *Lazard,* 32 South., 563; *Powell* v. *State,* 39 South., 167; *State* v. *Maloney,* 39 South., 545; *Comm. Mut. Life Ins. Co.* v. *Talbot,* 3 Am. St. Rep., 660; *Bennett* v. *Express Co.,* 23 Am. St. Rep., 77; *Funk* v. *St. Paul, etc., R. R. Co.,* 52 Am. St. Rep., 610; *State* v. *Henry,* 87 Miss., 143, 40 South., 152; 8 Cyc., 797, note 50.

It is manifest that the insertion of the word "not," in § 3 of the act, in that part of the section which, as printed, reads, "which will not be kept on deposit in said bank," was a clerical error, and that the section should be read as though the negative were eliminated. The intent of the section, as regards this specific part, is that the bonds to be deposited by any depository as collateral security shall be equal to fifty per centum of the estimated maximum amount which will be kept on deposit in the said depository.

It may be true that there are some harmless inaccuracies in the statute, and that in some respects it may be considered by some persons as unwise in its policies.

I submit that the law is a wise and just law; that the legislature had in view, in enacting this law, a scheme for the preservation of the public money, which in itself is not only wise but a perfect plan for the safe preservation of the money, and a just and equitable distribution of it among the banks of the

several counties which are taxed to support the levee sys-
tem.

But even if the courts should disagree with the legislature
as to the wisdom of the law, so long as the statute is constitu-
tional it must be upheld.  26 Am. & Eng. Ency. of Law, 569;
*Bunham* v. *Sumner*, 55 Miss., 517; *Virden* v. *Bowers*, 55 Miss.,
1; *Coke* v. *Bridges*, 45 Miss., 247; *Cole* v. *Humphries*, 78
Miss., 163, 28 South., 808; *State* v. *Henry*, 87 Miss., 143, 39
South., 896; *Thompson* v. *R. R. & B. Co.*, 3 How. (Miss.), 240.

One objection urged by appellant is that this law affects the
taxation and revenues of the appellee, and was not published
for four weeks prior to its introduction into the legislature, in
a newspaper published at the domicile of the board.  This
point is raised against the bill under Section 234 of the
constitution, providing that no bill affecting the taxation or
the revenue of the Yazoo-Mississippi Delta Levee District or
the Mississippi Levee District shall be considered by the legis-
lature unless said bill shall be published in some newspaper in
the county in which is situated the domicile of the board of
levee commissioners of the district affected thereby, for four
weeks prior to its introduction into the legislature.  This in-
volves the construction of that section of the constitution, and
in arriving at the true interpretation of the meaning of the con-
stitution the courts are not confined to the language of the con-
stitution alone, but may inquire into the intention of the pro-
visions.

In the case of the *Levee Commission for the Yazoo-Mississippi
Delta* v. *Houston*, 81 Miss., 619, 33 South., 491, where the con-
struction of Section 238 of the constitution was involved, the
language being "no property situated between the levee and the
Mississippi river shall ever be taxed for levee purposes," which
is a broad and comprehensive provision, covering all property
situated between the levee and the river, our supreme court said
that the kind of property then under discussion was not the
kind referred to in the constitution.  In the first place, this is
not an act affecting the revenue of the levee board.  That it is

neither the revenue nor the taxation which is treated.    Webster defines "taxation" to be "an act of a law taxing or imposing taxes on the subject of a state by the government, or on the members of a corporation or company, by the proper authorities. - The raising of revenue, also a system of raising revenue." Webster also defines "revenue" to be "the annual yield of taxes, excise, customs, duties, rents, etc., which a nation, state or municipality collects and receives into the treasury for public use." This is not the revenue that is treated of here.    It is the money *derived from the revenue and taxation.*

But if the courts should hold that it is the revenue that is referred to, clearly this law does not, in any manner, *affect* the revenue.    It was clearly the intention of the framers of the constitution to require a law *increasing or diminishing the revenue and taxation to be published,* which this law does not do.

There may be many reasons why the public would be interested to know and would have vested rights in a law that would increase or diminish the revenue of the levee board, but there can be no valid reason for the publication of a law providing a depository for the money of the levee board with ample security.    A taxpayer would be interested in a law increasing revenue, increasing taxation for levee purposes, because his taxes would be thereby increased, and he would be interested in a law diminishing the revenue or taxation because, if diminished too much, the scheme of the law creating the Board of Levee Commissioners for the protection of the alluvial lands of the district from overflow might be seriously interfered with for want of sufficient revenue.    But in what manner could a taxpayer be interested in a law providing that the money on hand in the treasury of the levee board shall be placed for better security in certain depositories?

On this point the authorities cited under sec. 1 of the constitution, and the reason impelling the framers of the constitution to enact section 234 are to be considered in connection with this construction.

Counsel cites the case of the *Trustees of the Aberdeen Female Academy* v. *The Mayor and Board of Aldermen,* 13 Smed. & M., 645, which I submit is not in point, because that was a case where the legislature undertook to change the purpose for which certain money was raised by the corporation of Aberdeen and apply it to another purpose.

It is contended by appellant that the statute is unconstitutional for the want of a proper title in that the corporate name of the appellee is *"Board of Levee Commissioners for the Yazoo-Mississippi Delta,"* and in this title it is denominated the *"Board of Commissioners of the Yazoo-Mississippi Delta."* This, I understand to be the only objection to the title raised by appellant, for no other possible point could be raised as the title is a fair index to the bill. There is no provision of the constitution on the subject of title to laws except Section 71 of the constitution, which is as follows: "Every bill introduced in the legislature shall have a title, and the title ought to indicate clearly the subject matter, or matters, of the proposed legislation." And the provision that "every bill shall have a title" is the only part of that section which is mandatory; clearly the provision that "the title *ought to indicate clearly the subject matter of the proposed legislation,*" is only directory as to what the title should contain, and the provision in the same section requiring the committee to which a bill is referred to express in writing its judgment of the sufficiency of the title, has placed it in the discretion of the committee whether the title is sufficient or not.

But this title is amply sufficient, and the objection that the technical corporate name of the appellee is not used in exact words in the title, has no force in it, because it is manifest at a glance that appellee is the corporation referred to, it being the only corporation in Mississippi which could be meant by a reference to *the Board of Commissioners of the Yazoo-Mississippi Delta,* it being the only Board of Commissioners in which the words *"of Yazoo-Mississippi Delta"* are used. If it could

be held to be an ambiguity, it would not be an objection to the bill that an ambiguity was found in the title, but could only be raised if the ambiguity were found in the body of the bill, and not then if it appears from the entire law what corporation is referred to. *United States* v. *A. C. R. R. Co.,* 164 U. S., 526 (41 L. C. P., 541); *Knowlton* v. *Moore,* 178 U. S., 41.

But the appellant attacks the *law itself* as not referring to the appellee by its technical corporate name, to-wit, *"The Board of Levee Commissioners for the Yazoo-Mississippi Delta,"* which is not used anywhere in the act, and it is argued for the appellant that for that reason the appellee cannot act under this law. There is nothing at all in this contention, if, as I insist, it is true that the court can determine from the act itself that it is the appellee that is referred to thereby. *Greene* v. *Weller,* 32 Miss., 650, citing Dwarris on Statutes. How is it possible to doubt from this entire act that this appellee is meant to be referred to? It is referred to as the *"Board of Commissioners of the Yazoo-Mississippi Delta"* in the title. In Section 1 it is referred to as the *"Board of Commissioners for the Yazoo-Mississippi Delta,"* also, as the *"Board of Commissioners."* In Section 2 it is called the *"Board of Commissioners,"* and the banks to be selected are to be located *"within the Yazoo-Mississippi Delta District."* In Section 3 it is repeatedly referred to as the *"said Board of Commissioners," "the Yazoo-Mississippi Delta Levee Board," "the said Levee District," "the said Board of Commissioners," "the said Levee Board."* In Section 5 it is referred to several times as the *"said Board of Commissioners," "said Levee District," "the funds of the Yazoo-Mississippi Delta Levee Board," "the said Levee Board," "the said Levee District,"* and so on throughout the entire act it is repeatedly referred to in these terms, so that it is impossible for any one to doubt, from the act itself, that it is the appellee which is the subject of the law, and no one else.

See *Attorney-General* v. *N. W. R. R. Co.,* 35 Wis., 425, also *Cotton* v. *Mississippi & Rum River Boom Co.,* 22 Minn., 372.

But it is contended for the appellant that this law interferes with and dictates to the appellee in its management of its private affairs, and directs it how to appropriate its money, under criminal penalty for a failure to comply with its provisions.

The answer to this is that the question of the criminal penalty on the officers and members of the board cannot be considered in determining whether the law itself is constitutional or not. This is a question to be raised upon the trial of the indictments against the officers and members of the board in case they refuse to comply with the terms of the law, and the cases cited by the appellant, if in point upon this proposition, hold that in proceeding to test the constitutionality of a law, the question whether or not the criminal features are valid, is not to be considered by the courts. *State ex rel. v. Bartley,* 23 L. R. A., 67.

But the counsel for the appellant also contends that the law is unconstitutional because he says that it created for the appellee certain offices and named them, and that this is obnoxious to the constitution, Section 250 providing that all qualified electors and no other shall be eligible to hold office, and the banking and trust company institutions, not being qualified electors, cannot be created public officers, and that the act of the legislature referred to by Section 8, fixing the term of office of a depository, makes it a public officer in violation of the constitution. This objection is not tenable. The mere calling of the time in which the deposit shall be made in a certain bank, a term of office, does not make a bank a public officer, nor create an office, and if the legislature had the right to create the depository, as I submit they had, the law would be constitutional, no matter what they were called. Taking the whole act together, it is nothing but a provision for the safekeeping of the money of the appellee, to-wit, the public money, and a preservation of it on ample security in the banks of the several counties.

If the legislature had the right, as has never been questioned, to nominate the state treasurer in the act of 1884 as ex-officio

treasurer of this board, and afterwards, by the act of 1888, to provide that the board might elect a treasurer and remove him at will, or might elect the same person as secretary and treasurer and remove him at will, there would seem to be no reason why it might not provide for places of safety in which the treasurer should keep the public funds.

Argued orally by *John W. Cutrer,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The act of March 20, 1908, under review, is as follows:

"Depositories for Yazoo-Mississippi Delta Levee Board.

"Section 1. Be it enacted by the Legislature of the state of Mississippi that the treasurer of the board of commissioners for the Yazoo Mississippi Delta shall deposit, or require to be deposited, the funds of said board now on hand or hereafter received, in such bank or banks as shall be selected, designated or commissioned by the said board of commissioners in the manner hereinafter provided.   All such funds so deposited shall be subject to payment upon demand by the treasurer on his warrant.

"What Banks Qualified to be Depositories.

"Sec. 2. No bank shall be selected to receive on deposit any funds belonging to said board of commissioners except such banks as are located in counties lying wholly, or partly, within the Yazoo-Mississippi Delta district.

"Depositories must Furnish Security for Funds.

"Sec. 3. Before any bank or banks shall be entitled to receive on deposit any funds belonging to said board of commissioners, such bank or banks shall deposit with the treasurer of said board of commissioners either or any of the following bonds, to-wit: Bonds of the United States of America.   Bonds of the state of Mississippi.   Bonds of the Yazoo-Mississippi Delta levee board.   Bonds of any county lying in whole or part in said levee district.   Bonds of any city located in a county which is in whole or in part in the said levee district.

"Bonds Deposited for Security—Guaranty Bond Also Given:

"The validity of such bonds to be approved by the attorney of said board of commissioners. The par value of which said bonds so deposited shall be equivalent to fifty per cent. of the estimated maximum amount, which will not be kept on deposit in said bank under the provisions of this act. Said bonds shall be deposited as collateral security, and the treasurer of said board shall have the right, power and authority to declare said bonds to be the property of said levee board, immediately upon the failure or refusal of any bank or banks to pay any legally authorized warrant for any amount not exceeding the then deposit, drawn on it or them by the treasurer of said board of commissioners, the said treasurer may then proceed under the direction and authority of the board of commissioners to dispose of said bonds in such manner as the said board of commissioners may see fit. In addition to the deposit of bonds said bank or banks shall also file with the treasurer of said board a bond or bonds signed by four or more individual sureties, or two or more surety companies authorized to do business in the state of Mississippi, which said bonds shall be subject to the approval of the said board of commissioners or the president and two members of said board, if the board shall not be in session, but if said indemnifying bond be approved by the president and two members, their action shall be ratified or annulled by the board at its next regular or special meeting. The amount of said indemnifying bond or bonds shall be equivalent to seventy-five per cent. of the estimated maximum amount which will be kept on deposit in said bank. Said bond or bonds to be conditioned according to the law fixing the penalty and conditions for the bond of the treasurer of said levee board, and in addition to the above mentioned security the stockholders of all banks qualifying as depositories under this act are hereby made liable for any loss sustained on account of the failure of such depository to faithfully discharge its duties as depository, and to pay over all amounts deposited with it upon demand, each stockholder being so liable for an amount equal to the par value

of his stock in such bank. In the event any bondsmen or stockholder reimburses said board of commissioners for any loss occasioned by a failure of a depository to faithfully discharge its duties as such, he is hereby subrogated to the rights of said board of commissioners against the other bondsmen and stockholders in such depository as before prescribed. It is further provided that the creating of this additional security and the acceptance of the collateral hereinbefore mentioned shall not be construed as waiving any rights, benefits, or privileges conferred by law upon the commission in the matter of recovering public moneys or trust funds from banks in which they may be deposited. When the said board shall have selected a bank as its depository it shall be the duty of the secretary thereof to, within ten days thereafter, notify said bank of its selection, and the estimated maximum amount of money which will be on deposit at any time therein in order that said bank may know the amount of security to be filed.

"Sec. 4. The words "bank" or "banks," whenever used in this act, shall include trust companies.

"How Banks to be Selected for Depositories.

"Sec. 5. The said board of commissioners shall select the bank or banks in which the said funds are to be deposited in the following manner, to-wit: The said board of commissioners shall meet in special session on the first Tuesday in the month of May, 1908, and every two years thereafter, and by order designate a bank or banks in each and every county lying wholly or partly within said levee district, in which said banks so selected and designated the funds of the Yazoo-Mississippi Delta levee board now on hand or hereafter to be received shall be deposited by the treasurer of said board, when said bank or banks shall have qualified to receive such deposit as hereinbefore provided. The said board of commissioners shall by order direct its treasurer to deposit and to keep on deposit, except when drawn in the regular course of business, in each county

that proportionate part of the funds of said levee board which is paid into the treasury of said board of that county, and in drawing from said depositories any funds in the due course of business the treasurer shall at all times endeavor in so far as possible to maintain a proportionate ratio on deposit. The said board of commissioners may, in their discretion, designate more than one bank in any or each of said counties as depositories, and in that event the proportion of funds to which that county is entitled shall be divided in such a manner as the board may see fit to divide same between such depositories in that county. And in case there shall be no bank in any county in said levee district willing to accept said deposit and to qualify under the provisions of this act, to receive the same, then and in that event the proportion of the funds which would otherwise be deposited in such county shall be divided amongst the remaining counties in proportion to the amount such counties contribute to the revenue of said board, and this same deposit of funds shall be made in case of the banks of any county, after having qualified and received the deposit, shall surrender their deposits or refuse to continue as depository. And said board shall have the power, and it shall be its duty, to select and designate depositories at any regular or special meeting when such election shall be necessary.

"Expenses of Delivery of Funds to be Paid by Depository—Banks to Guarantee Payment of Warrants.

"Sec. 6. When any bank or banks shall have qualified to receive the deposit of said board, the funds of said board shall be delivered to the agent or representative of each of said banks at the office of the treasurer of the said board of commissioners, and the said board of commissioners shall in no event be required to incur any expense in the delivery of funds or any part thereof to any depository. Before receiving any of the funds belonging to said board of commissioners, each and every bank becoming entitled to the same shall guarantee the payment

of all warrants, drafts, or checks drawn by the treasurer of the. said levee board in favor of himself at the domicile of said levee board without cost to said board of commissioners.

"Depositories to be· Commissioned and Also Publish Fact of Being a Depository.

"Sec. 7. After any bank has been selected by order of the board as a depository, and shall have in every respect complied with the law, and shall have placed security as required, the said board of commissioners shall issue to such depository a commission, and every such depository receiving a commission shall thereupon publish the fact that it has been duly and legally commissioned to receive said levee funds, in a newspaper published in the county in which the bank is located, for three consecutive weeks, and proof of such publication shall be filed with the treasurer of said board of commissioners. '

"Term of Office of Depository to be Two Years.

"Sec. 8. The term of office of a depository shall be two years from the date of the issuance of its commission, but its liability shall continue after the expiration of its commission for so long a time as any of the funds hereinbefore mentioned remain on deposit therein.

"Depository must Qualify within Sixty Days. Failure to Qualify Forfeits Contract.

"Sec. 9. Every bank designated by order of the board as a depository shall qualify to receive the deposits under the provisions of this act within sixty days after the secretary of said board shall have mailed said bank a notice of its selection, and should any bank fail to qualify within the time prescribed, or within such additional time as the board may allow by order beforehand, the board of commissioners may then, and in that event, select or designate another bank or other banks in the same county in which is located the bank which has failed to qualify, and in event there be no other bank in such county, or in the event such other bank fails, neglects, or refuses to qualify

as a depository, then the funds to which the county would otherwise be entitled shall be deposited as hereinbefore provided.
"Form of Commission to be Issued.

"Sec. 10. The form of the commission issued to the depository shall be as follows:

" 'To All to Whom These Presents Come—Greeting:

" '———— Bank of ———— having complied with all of the requirements of law, and having placed the following securities with the treasurer of the board of commissioners of the Yazoo-Mississippi Delta, to-wit: Bonds of ———— (here insert description of the bond) to the amount of $————, and having given an indemnifying bond in the sum of $————, with ———— per cent., as sureties thereon, said bank is hereby created and appointed a depository for the funds of said board for a term of two years ending with ———— day of ————, 19—, but shall not have on deposit at any time any amount exceeding $———— of the funds of said board of commissioners.

" 'Witness the signature and the seal of the said board of commissioners this the ———— day of ————, 19—.

" '————, President.

" '————, Secretary and Treasurer.'

"Payment to Depository Relieves Treasurer of Liability.

"Sec. 11. The payment by the treasurer of the said board of commissioners of the funds of said board into the qualified depositories releases the treasurer and his bondmen from any liability for any loss of such funds which may occur by reason of the fact that the money was so deposited. The treasurer's liability to the levee board is not otherwise affected by this act.

"How Tax Collector of County may Settle.

"Sec. 12. In making settlement with the treasurer of said board of commissioners, the tax collector of each county may pay the amount due the board of commissioners over to a depository in his county, if there be one in his county; otherwise he shall pay the amount to the treasurer of the said board of

commissioners. The tax collector, in making deposits, shall receive duplicate receipts for the same, and shall mail the treasurer of the board of commissioners one of such receipts.

"Accounts of all Moneys Deposited Required of Depositories.

"Sec. 13. The treasurer of said board of commissioners shall require of each depository accounts of all moneys deposited, and when deposited, and shall require of each depository at the beginning of each and every month a statement showing the daily balance of levee monies held by it during the next month preceding, which said statement shall be filed by the treasurer for inspection of the board of commissioners, and it shall be the duty of the said treasurer to keep an account with each and every depository and to verify the statements rendered as hereinbefore provided.

"Unlawful Use of Funds; to Make Profit by Levee Board Officials a Felony.

"Sec. 14. The making of profit, directly or indirectly, by the treasurer of said board, or by any member of said board, or any officer whatsoever, out of any funds belonging to said board, the custody of which the treasurer is charged with, by loaning or otherwise using it, or by depositing same in any manner contrary to law, or of the removal by the treasurer, or by his consent, of such monies or a part thereof, and placing it elsewhere than is provided by law, shall constitute a felony, and upon conviction thereof shall subject the treasurer, or other officer, to imprisonment in the state penitentiary for a term not exceeding two years, or a fine not exceeding five thousand dollars or by both such fine and imprisonment, and the treasurer or other officer offending shall be liable on his official bond for all profits realized from such unlawful use of such funds.

"Failure to Perform Any Duty under This Act is a Misdemeanor.

"Sec. 15. Should any officer, treasurer, or member of the board of commissioners, or custodian of the funds, willfully fail or refuse at any time to do and perform any act required by

him or it by this act, he or it shall be guilty of a misdemeanor, and upon conviction thereof shall be sentenced to pay a fine of not less than five hundred dollars nor more than five thousand dollars, or by imprisonment in the county jail not less than ten day nor more than thirty days, or both.

"Sec. 16. That this act take effect and be in force from and after its passage.

"Approved March 20, 1908."

It is earnestly insisted that this act is unconstitutional, and, if not unconstitutional, then that it is void and unenforceable for vagueness and uncertainty. We make a preliminary observation, which is that in section 3 of said act the word "not" is clearly read out of that section by the context of the section itself. The sentence reads as follows: "The par value of which said bonds so deposited shall be equivalent to fifty per cent. of the estimated maximum amount, which will not be kept on deposit," etc. Plainly the Legislature meant to say "which will be kept on deposit." It was a mere clerical misprision, obvious to the apprehension of any intelligent reader, as plainly shown by the context of that section and of the whole act.

We make another observation that with respect to the wisdom, or propriety, or good policy of this law we, as a court, have nothing whatever to do. That is the matter exclusively for the Legislature.

The chief assault upon this act, so far as its alleged unconstitutionality is concerned, is that it violates section 234 of the constitution, which is as follows: "No bill changing the boundaries of the district, or affecting the taxation or revenue of the Yazoo & Mississippi Delta levee district, or the Mississippi levee district shall be considered by the Legislature unless said bill shall have been published in some newspaper in the county in which is situated the domicile of the board of levee commissioners of the levee district to be affected thereby, for four weeks prior to the introduction thereof into the Legislature; and no such bill shall be considered for final passage by either the Sen-

ate or House of Representatives, unless the same shall have been referred to, and reported on, by an appropriate committee of each house in which the same may be pending; and no such committee shall consider or report on any such bill unless publication thereof shall have been made as aforesaid." The precise contention is that this act was not published as stipulated in this section, and that it was a bill "affecting the taxation or revenue of the Yazoo-Mississippi Delta levee district." We do not so think. We think this provision of the constitution had in mind alone a law which would increase or diminish the rate of taxation or amount of revenue to be derived from taxation for the protection of the people of this district by the construction of levees. It had no aspect towards the innumerable details which legislative bills might have in respect to the revenue or taxation of this district, otherwise than as increasing or diminishing said revenue. It cannot be said that the taxation of the said levee district or its revenue is affected in the constitutional sense, except by some measure increasing or diminishing same. It is a law of such serious nature as that which the people of the district were entitled to have notice of by publication, as provided in said section.

It is said, again, that this is a highly penal statute, and therefore must be construed *strictissimi juris*. The purpose and object of all construction of legislative acts is to get at the intent and purpose of the legislature. We do not think we have ever seen this principle more correctly and sanely stated than in the case of *Bryant* v. *United States,* 105 Fed., 941, where the court said: "While it is true that penal statutes should be strictly construed, it is undoubtedly the duty of the courts to look to the mischief intended to be prevented, and to take into consideration the character of the remedy proposed to be applied, in doing which the mere letter must yield to the manifest spirit, and give to the provisions that measure of restriction or expansion which a sound, reasonable reading of the

whole requires of each particular." This is the true spirit in which this and all other statutes should be construed.

We do not think there is anything in the contention that the corporation is not identified in the title to the bill. This position is overstrained. There can be no reasonable doubt as to what corporation was meant. We do not think the act itself, or the title of the act, is subject to criticism as unconstitutional.

Again, it is most earnestly insisted that the act is unconstitutional because it seeks to deprive the appellee of its property without due process of law, and to deny to appellee the right to contract with respect to its property, property rights, and franchises. Quite an array of authorities is cited to the proposition that bodies of legislative creation, like this levee board, are entitled to the protection of the courts so far as their autonomy, their property, and internal affairs are concerned; that these are matters which are committed by the constitution to the discretion of the governing body of the levee board; that this board, by the provisions of the constitution, is granted absolute protection in the possession, control, and disposition of its property; and that, whilst it may be a public corporation, as distinguished from a private corporation, and in political and governmental matters may be the representative or auxiliary of the state, nevertheless it is a separate and distinct corporation in all other matters, entirely independent of the state, with property rights which are protected, and of which it cannot be deprived without due process of law. The general principle here announced is also sought to be fortified by the case of *Aberdeen Academy* v. *Aberdeen,* 13 Smed. & M., 645. There is no sort of doubt as to the correctness of the general principle announced in these decisions. The trouble with appellant's cases is that they have no application to this act under consideration as applied to this particular levee board corporation. It is, in a most peculiar sense, a governmental corporation, exercising governmental powers. This act does not deprive it of any of its property.

It does not deny to it the due process of law. It exercises no sort of power to dispose of its property in any way. In the case in our state referred to (*Aberdeen Academy* v. *Aberdeen*) the act condemned sought to wholly divert or transfer the use of money from its proper purpose to a wholly different purpose, despite the control of the mayor and board of aldermen of the city. Nothing of that sort is attempted in this case. The most critical and careful scrutiny may be made of this act from the beginning to the end of it, and the whole range and furthest verge of criticism reaches no further than to point out defects in the act, easily amendable by succeeding legislatures—inaccuracies of expression and the like, and various changes in the manner of administering the funds of the board, mere details of administration, and nothing more. It would too far protract this opinion, and, serve no good purpose, to enter upon a *seriatim* consideration of all these various defects and these different changes in the mere method of administering the funds of this board. It is sufficient to say, what has often been said, that the legislature has the amplest power to change, alter, and modify the machinery of a board like this, so long as it does not trench upon any constitutional rights that such board may have, and we think, after the fullest consideration, that all this act can be said to do is, in quite a sweeping fashion, to alter and change and modify the manner and method of administration of the affairs of this board. None of these objections make the act unconstitutional.

It is said that the freedom to contract is denied to this board. We do not so apprehend the meaning of the act. It is still free to make any and all contracts whatsoever, within the scope of its powers, for the protection of the people of the delta by the construction of proper levees. Nothing in this act contained denies that freedom to contract in its fullest scope. Great complaint is made with respect to the provisions of the act as regards indemnifying bonds. The character of the sureties which shall appear upon such bonds, it is said, is determined

by the act itself, and the board is stripped of all discretion in the matter.   We see nothing in any of these provisions of an unconstitutional character.   They all relate, as stated, to the mere mode of administration of the affairs of the board, and · fall easily within the plenary power of the legislature over it :and its affairs.   The case of *People* v. *Bachelor,* 53 N. Y., 128, 13 Am. Rep., 480, is not at all applicable to the case in hand.

One of the sharpest criticisms of the act indulged in is that in section 3 it is provided that "said bonds shall be deposited as collateral security, and the treasurer of said board shall have the right, power, and authority to declare said bonds to be the property of said levee board immediately upon the failure or refusal of any bank or banks to pay any legally authorized warrant for any amount," etc.   But the very next clause. of the same sentence provides that said treasurer may then proceed under the direction and authority of the board of commissioners to dispose of said bonds in such manner as the said board of commissioners may see fit; but, manifestly, the whole clause, taken together, shows plainly that the treasurer was to declare them (the bonds) the property of the board for the purpose of collateral security, and for sale for that purpose as the commissioners of the board might see fit.

Much is said about this case creating the relation of debtor and creditor between the board and the banks which may be chosen as depositories, and about the severity of the penalties provided in the act, and as to the act creating such depositories officers when they are not eligible as electors, etc., and about the *pro rata* distribution of the funds provided for, etc., all of which criticisms fall far short, in our judgment, of establishing the unconstitutionality of the act.   Indeed, if we should merely state the criticisms, ingeniously and most ably put, we would write an opinion unpardonable in length.   It is enough to say that we have carefully considered each and every. one of them, and we fail entirely to see that the act is unconstitutional in any respect; nor do we think the act can be said to be void

and inoperative because of vagueness and uncertainty. It may be conceded that the act might have been much more clear, and might have been drafted with much more care; but it would be going entirely too far to say that, whatever its inaccuracies or defects may be in this regard, they are so patent as to make it void or inoperative for uncertainty.

The result is that we think the action of the court below was correct, and the decree is affirmed.

*Affirmed.*