WIRT ADAMS, STATE REVENUE AGENT v. HERBERT T. SAUNDERS ET AL.

[46 South. 960.]

1. TAX COLLECTORS. *Defaulters. Penalties. Statutes. Code* 1892, § 3840. *Laws* 1904, *ch.* 161, *p.* 216. *Code* 1906, § 4357.

Code 1892, § 3840, authorizing judgment against a defaulting tax collector and the sureties on his official bond for the amount of the default with thirty per centum per annum damages was not in force after Laws 1904, ch. 161, p. 216, became operative; the latter statute, now Code 1906, § 4357, only authorizes a judgment for the default and thirty per centum thereon, with six per centum per annum interest on the whole from the time it should have been paid over.

2. SAME. *Code* 1906, § 4359.

Code 1906, § 4359, providing that suits against defaulting tax collectors and their sureties shall be preference cases and that judgments shall be given therein for the full amount due with thirty per centum per annum damages relates to matters of procedure and is not in harmony with Code 1906, § 4357, relating to substantive rights on the same subject and the latter must prevail.

3. SAME. *Penal statute. Construction.*

The statute, Code 1906, § 4357, imposing damages for the failure of a tax collector to pay over taxes collected is penal and must be strictly construed and applies only where the conduct of the offender come clearly within the terms of the law.

4. SAME. *Case to which penalty does not apply.*

Where a tax collector by virtue of his office collected more money for taxes than was due from the tax payers and paid over only

the sum due, he and the sureties on his official bond were liable for the excess, but not for the thirty per centum statutory damages thereon.

:5. SAME. *Code* 1906, § 4357. *Governor's and attorney general's certificate. Remittitur. Time when to be made.*

Under Code 1906, § 4357, providing for a remittitur of the damages charged against a tax collector for delay in accounting and paying over money collected as taxes upon a certificate of the governor and attorney general that they are satisfied the delay was not wilful or avoidable by the collector, the certificate can be made·at any time before the demand has ripened into a judgment on decree.

6. SAME. *Rate of interest.*

The amount collected by a tax collector and withheld bears the legal rate of interest, six per centum per annum, from the time it was due to be paid until the date payment is actually made.

FROM the chancery·court of Oktibbeha county.

HON. J. QUITMAN ROBINS, Chancellor.

Adams, state revenue agent, appellant, was complainant in the court below: Saunders and others, appellees, were defendants there. The case was once before in the supreme court and is reported, *Adams v. Saunders,* 89 Miss. 784, 42 South. 602. After the case was remanded, the court below decreed in favor ·of the revenue agent but did not adjudge so much to be due as was demanded, and that officer appealed to the supreme court a ·second time, and the defendants prosecuted a cross-appeal.

The original and amended bills of complaint charged that Saunders, as tax collector, wrongfully withheld from the county treasury the sum of $1,010.80 collected from taxpayers of the ·county in the year 1898, and the further sum of $1,360 collected from the taxpayers in the year 1891, making a total of $2,371.08, for which he has failed to account. The above figures were obtained by an examination of the cash books of the ·tax collector and stub tax receipts on file in the chancery clerk's ·office. Itemized statements for each year are filed with the bill ·of complaint. The original bill was filed July 21, 1904, and :the amended bill and exhibits were filed on August 9th of

the same year. The revenue agent demanded of the tax collector and his sureties the $2,371.08, with thirty per centum. per annum interest from the date of default until payment. The answer of the defendants denied the material allegations of the complainants bill, and, the issue being joined, the facts of the case were agreed to be as follows, to-wit:

*Agreed statement of facts.*

"It is formally agreed by the several parties to this suit that during the years 1890 and 1891 H. T. Saunders was the acting sheriff and tax collector in and for the county of Oktibbeha, and that the codefendants named in the amended bill of complaint filed herein were the sureties on the bond of said sheriff and tax collectors; they being sureties on the tax collector's bond.

"Second. It is agreed that during the year 1890 and 1891 the said H. T. Saunders, tax collector, settled with the county of Oktibbeha by paying over to the proper officer of said county all of the money with which he was charged by the clerk of the board of supervisors of said county, and which was chargeable against him as shown by the books of the county auditor; that his settlements with the treasurer of said county were made in strict conformity with all legal requirements, in so far as paying over all with which he was charged; that these settlements were approved by the chancery clerk in his official capacity as county auditor, and duly and legally submitted to the board of supervisors of said county, and were by said board accepted and approved; that the said tax collector was charged upon the books of said county auditor with the full amount due to the said county upon the real and personal assessments thereof, according to the assessment rolls of said county, and including all additional assessments, made by the tax collector and otherwise, and according to the legal levy or rate of taxation for the years 1890 and 1891, respectively, with the proper allowance for such assessments as were insolvent or not collectible; and that the net sum thus ascertained was the sum with which the said tax col-

lector was charged, and was the sum which he paid into the
county treasury, in conformity with all the forms and require-
ments of law, and that the same was received by the proper of-
ficials of said county in full satisfaction of defendants liability
and indebtedness to said county, as it appeared from their books.

"Third. It is agreed that the statements of accounts filed as
Exhibits A and B are true and correct statements taken from
the books of said sheriff and tax collector, to-wit: That the said
collector collected for the year 1890, exclusive of polls, the total
sum of $32,718.93; that he paid over to the state, $6,543.58;
that he paid into the county treasury $24,178.32; that he was
entitled to commissions amounting to $985.25; that the amount
of $1,010.80 was not accounted for, either to the state or to the
county; that the said collector collected for the year 1891, ex·
clusive of polls, the sum of $30,870.71; that he paid over to the
state $5,402.37; that he paid into the county treasury
$22,868.18; that he was entitled to commissions amounting to
$1,239.85; that the amount of $1,360.31 was not accounted for,
either to the state or to the county. It is further admitted that
the amounts paid into the treasury, as shown in Exhibits A and
B, were the amounts shown by the auditor to be due the county
and the amounts with which the said collector was charged. It
is further admitted that one-third of the amount of the above,
referred to as being unaccounted for during the year 1890, ac-
crued as a result of collecting damages in the manner and form
set forth hereinafter as article or section 4 of this agreement,
and that one-third of said amount was collected by the said tax
collector in the manner and form to be hereinafter mentioned
and described in section five of this agreement, and one-third
as indicated in section six thereof; that for the year 1891 the
same thing is true, one-third of the sum mentioned as unac-
counted for was collected in the manner first above described,
to-wit, as damages, and one-third as school tax mentioned in
said section five of this agreement, and one-third as outlined in
section six hereof.

"Fourth. It is further admitted and agreed that the said tax collector collected from one John Doe, an individual taxpayer of said county, the sum of $110 for taxes due for the year 1891, and that he entered the said collection as $110 in the book of entries required by law to be kept for that purpose; that he issued to the said John Doe a tax receipt for $100, and returned a duplicate of said tax receipts, as required by law; that the amount of taxes due from said John Doe for the fiscal year, 1891 was $100, the said $100 being the amount due upon the valuation with which the said John Doe was assessed, and with which the said tax collector was charged by the clerk of the board of supervisors; that the said tax collector paid into the treasury of said state and of said county the sum of $100, the said amount of taxes due upon said valuation, and retained for himself as damages thereon the sum of $10; that the collection was made after the 15th day of December of the year in which the taxes were due; that the said $10 was not entered in the book of entries, nor on the tax receipt of John Doe, nor on the stub duplicate receipt retained as damages, and the fact that it was intended as damages was not disclosed to the said John Doe, nor known to him to be such, but that the same was voluntarily paid by the said John Doe to the said tax collector as a part of the taxes of said Doe.

"Fifth. It is agreed and admitted further: That Richard Roe is a resident taxpayer of the city of Starkville, county of Oktibbeha, and that all the property of said Richard Roe lies within the corporate limits of the city of Starkville. That the said property is assessed at a valuation of $10,000. That during the year 1891 the said city of Starkville constituted what is known as a separate school district in said county. That the board of supervisors of said county had no right to levy or collect school taxes from the property of persons situated or residing in said school district. That for and during the year 1891 the board of supervisors of said county made the following tax levy, to-wit: On account of common county, three and one-

half mills; on account of school fund, three mills; on account of railroads, four mills; on account of bonds, one mill—making a total levy of eleven and one-half mills. That the state levy was three and one-half mills, making a total levy upon which said tax collector was to collect for the state and county fifteen mills. That this rate was to be collected from all citizens of Oktibbeha county, except from those taxpayers whose property was located in the said separate school district. That from those taxpayers whose property was so located the rate upon which the tax collector was to collect was fifteen mills, less three mills, the amount levied for school purposes, or twelve mills; they not being liable for this school levy. That in making up the account with which the tax collector was charged the clerk charged the tax collector upon this item upon a valuation of $10,000 at the rate of twelve mills, making $120. Then, when said tax collector came to collect the taxes from said Richard Roe, he failed to discriminate between him and the residents of the county at large, but collected from him at the rate of fifteen mills upon the said valuation of $10,000, thereby collecting $150. That this amount was voluntarily paid by the said Richard Roe, without compulsion on the part of the tax collector. That the said taxpayer did not disclose to the said tax collector that this was an illegal tax, nor did he give the defendant tax collector notice that he would seek to recover by suit or otherwise the amount thus paid to the said tax collector. When the said tax collector came to settle with the proper officer for the state and county, he paid them only such amounts as he was charged with, to-wit, $120, retaining the amount which he had wrongfully collected, to-wit, $30, which amount, as stated. had not been charged to him. It is further agreed that the board of supervisors had no right to levy this tax upon the property in the school district, and that it did not intend the levy to cover such property, and that it had no legal right to collect such taxes, nor had the sheriff and tax collector the legal right or power to collect same.

"Sixth. It is agreed and admitted further that John Stiles during each of the years 1890 and 1891 was assessed upon the real estate and personal rolls of the said county in the aggregate sum of $10,000; that he was legally liable to the state for taxes thereon amounting to $40; that he was legally liable to the county for the taxes thereon, amounting to $160; that the said tax collector collected from the said John Stiles on the 1st day of November in each of said years the sum of $230, giving him therefor official tax receipts in the usual form; that the said collections were duly entered in full as made upon the tax collector's books, and in his settlement he paid over to the state thereon the sum of $40 and to the county the sum of $160 in each of said years; that the collector did not account for or pay over either to the state or to the county the overcollected sum of $30 made by him in each of the said years; and that he now retains the said amounts.

"Seventh. It is lastly agreed and admitted that the said tax collector has now on hand, as a result of the collection made as above stated, the amounts stated as Exhibits A and B, and for the years therein mentioned."

Upon this agreed statement of facts and the pleadings the cause was submitted to the chancery court of Oktibbeha county at the August term, 1905, and the bill was dismissed, from which decree of the court an appeal was taken by the revenue agent to the supreme court, and after due deliberation the supreme court decided that Saunders, tax collector, would have to pay into the county treasury the moneys which he had collected, amounting to $2,370, having collected the same as tax collector, and reversed the decree of the chancery court, and remanded the cause, with instructions to the court below to enter a decree for the amount of $2,370, with such damages as is allowed by law, to be ascertained by an accounting. After the cause was remanded, the governor and attorney general made a certificate, as is provided by the statute, and the county auditor remitted the damages. The defendants applied to the court to

amend their answer, and pleaded this fact, and filed as exhibits to their amended answer the certificates of the attorney general and the governor, together with the order of the county auditor remitting the damages. The court then heard the cause on the agreed statement of facts, and entered a decree against Saunders, tax collector, and the sureties on his bond, for the $2,370.31 and thirty per centum damages, with six per cent. interest on both the principal and the damages, amounting to $6,135.36.

*O. G. Johnson,* for appellant and cross-appellee.

I shall assume that the question as to the right of the executive department of the state to interfere with the judicial department unless clearly empowered so to do, not by implication but by direct constitutional authority, is too elemental to require the presentation of authority. Further, I feel that it is not necessary to dwell at length on the fact which the various courts of our land have so often discussed namely, that even where express power is given one department of the government to interfere in the most trivial matter with another co-ordinate branch of that government is an extremely dangerous proceeding to exercise such power.

The next question presenting itself is, whether or not the damages shall be calculated at the rate of thirty per centum and six per centum per annum, as provided by Code 1906, § 4357 or thirty per centum per annum as provided by Code 1906, § 4359. The learned court below was of the opinion that damages should be assessed under Code 1906, § 4357.

This suit was brought by the revenue agent acting under and by virtue of the authority in him vested by the acts of 1894, p. 29, and brought forward is Code 1906, § 4738, which gives the revenue agent the right to institute suits for all forfeitures or penalties, for all past due obligations and indebtedness of any character, and provides that he shall have a right of action in all cases where the state or any county shall have a

right of action, so much for his general authority. This par-
ticular suit being brought by the revenue agent acting in lieu
of the district attorney under the authority specifically given
by Code 1906, § 4360 or which is the same thing as Code 1892,
§ 3843, which provides for the method of procedure in cases of
the non-payment of county taxes by a tax collector, and that
such suits shall be conducted under the same rules as laid down
in Code 1892, §§ 3841, 3842, Code 1906, §§ 4358, 4359 in
cases of non-payment of state taxes. Code 1906, § 4357 pro-
vides for the tax collector's reports requiring them to be in writ-
ing, prescribing the time for settlements and fixing a specific
penalty to be charged by the state or county auditor for a "de-
layed" settlement, making such penalty thirty per centum on
the amount due and providing for interest at the rate of six per
centum per annum from the time same was due until paid.
Under Code 1892, § 3840, which corresponds with Code 1906,
§ 4357, the penalty for delayed settlements was thirty per
centum; in 1904 the legislature realizing that many instances
of delayed settlements arose from unintentional causes and
feeling that the penalty was excessive altered the same, making
it thirty per centum on the amount due and interest thereon at
the rate of six per centum per annum. Counsel for appellee
insist that it was the intention of the legislature to change the
penalty not only for delayed settlements of current taxes but
also to change the penalty prescribed by Code 1892, § 3841,
Code 1906, § 4359, in cases where suits were necessary and
judgment entered, counsel insisting that the failure to strike out
the words "per annum" in Code 1892, § 3842 was an over-
sight on the part of the legislature. That counsel are clearly
mistaken is unquestionably shown when they remember that
the Code of 1892 with all its amendments was submitted to
competent commissioners whose duty it was to revise, annotate
and correct the Code. An examination of the Code as submit-
ted by the code commissioners for the consideration of the legis-
lature in 1906, we find the Code of 1892 as amended by the

acts of 1904 appears, fixing a penalty of thirty per centum is brought forward unchanged. Counsel would therefore have us assume that the code commissioners committed the same oversight as did the legislature of 1904. Next we find that the legislature of 1906 re-enacted § 3842 thereby bringing it forward in the Code of 1906. The court cannot presume to infer that the legislature of 1904, the code commissioners and the legislature of 1906 each and all committed the same blunder and permitted a statute imposing so heavy a penalty to be enacted by accident.

There is a vast distinction between the class of cases sought to be reached by § 4357 and the class sought to be reached by § 4359. The first is dealing with tax collectors handling a current tax, regulating the time and manner of settlement and fixing a penalty, not for a failure to settle, but a "delayed" settlement. That this is certainly a fact is evidenced by the concluding paragraph of the section which provides that upon being satisfied that the "delay" was neither wilful nor avoidable the governor and attorney general could remit the penalty upon their certificate that the delay was not wilful. Section 4359 deals with collectors who have failed absolutely and unqualifiedly to account for the moneys coming officially into their hands and providing that where a collector persists in wilfully withholding moneys belonging to his superiors, making it necessary for his superior to incur the risk, delay, expense and burden of litigation in an effort to collect that which should have been paid over in the manner provided by law, further providing as a penalty for such gross misconduct that damages as the rate of thirty per centum per annum should be charged, and thereby distinguishing between the tax collector who is guilty of delaying his settlement beyond the time prescribed therefor, but who ultimately settles without suit, and the collector who refuses to settle until forced to do so by judgment of the court.

Section 4359 which fixes the penalty of thirty per centum

per annum deals exclusively with collectors of state funds. Section 4360 prescribes the method of procedure in cases where the collector withholds county funds, using this language: "Like proceedings shall be instituted by the district attorney or an attorney employed by the board of supervisors for non-payment of county taxes. This court has held that the words "like proceedings" include the thirty per centum per annum damages. *State v. Lewenthal*, 55 Miss. 589.

*Alexander & Alexander*, for appellees and cross-appellants.

It is a cardinal rule of construction that the spirit of the statutes must be looked to. Courts must ascertain the spirit of the statutes, looking to the old law, the mischief and the remedy. The sections must be viewed together and so as to harmonize with the obvious scheme of the legislature. It is quite manifest that the legislature in 1904 plainly and unequivocally declared that thirty per centum with six per centum per annum should be the measure of liability. It was determined that the penalty of thirty per centum per annum damages was too severe and rigorous. It would soon go in many cases beyond the amount of the bond. The liability would arise frequently over mistake, ignorance or inadvertence. Whatever the reason, the legislature in a statute which dealt solely with the amount of damages and the power to remit them evidenced its will and determination that the damages at thirty per centum per annum should no longer apply. The fact that the incidental reference to thirty per centum damages per annum in Code 1892, § 3842, was not changed also by amendment was clearly the result of an oversight; but, if it be held that the courts will not presume an oversight, we still say that, assuming that all the sections stand together, the one dealing with the term of court will not control and repeal the one dealing with the creation of the liability. This will result from more than one cardinal rule of construction. The enactment of a statute operates to repeal all existing statutes in conflict with it. Another rule is that the

repeal of a penalty operates as an abatement of all suits to re-cover the penalty. There can be no vested right in a penalty unless it be in the rare instances where liquidated damages are given to a person who has been injured in satisfaction of his loss or in lieu thereof. It may be in such a case that the person injured acquires a vested right when the injury is committed, but the general rule undoubtedly is that the legislature which can create penalties has unlimited power to remit them; of this, hereafter. A third rule of construction which we invoke is that where there is a conflict between two sections, the one which deals solely with the matter in controversy—the matter to which the legislative mind is directed when it is enacted controls as against an inconsistent incidental provision or reference to a matter contained in another section.

Under the first of these propositions we say that the act of 1904 repealed so much of the preceding statutes or sections as provided directly or indirectly or by implication for thirty per centum per annum damages. There being a plain and irreconcilable conflict between the act of 1904 and Code 1892, § 3842, the latter must yield. This seems to us too plain for argument, and we will not cite authorities for the proposition. The result was that after the act of 1904, the penalty of thirty per centum per annum no longer existed and so it was that when this suit was brought, which was after the act of 1904, the penalty had been mitigated and only thirty per centum damages with six per centum per annum could be recovered. We hardly suppose it will be contended that it was beyond the power of the legislature to repeal or mitigate the penalty. This penalty was not one created by the constitution, and therefore the legislature which created it could not abrogate it at will. The revenue agent is a mere arm of the state having no greater rights than the district attorney in certain cases to sue for the state or the attorney general. He has no fixed right even to his office. It can be abolished at will by the state. An office is not a contract. If then the legislature could abolish the office which is not a constitu-

tional office and could repeal the act under which he sues, surely it can mitigate the penalty and provide for its complete remission by the governor or attorney general or by any other officer or commissioner appointed. The whole matter of the damages, proceedings to recover them and the remission thereof are statutory. It is plain that the liability for penalties is not within the constitutional inhibition against the legislature contained in section 100, which applies only to obligations or liabilities held or owned by the state, etc., the words "obligations and liabilities" being used interchangeably. This section was not dealing with fines, forfeitures and penalties, and especially with those which should be created by the legislature, and which in the very section creating them contained provision for their release. Even if a forfeiture or penalty were within this provision of the constitution this one came into existence subject to the power to release or remit. It would be so to speak a contingent or conditional obligation. As a matter of fact fines, forfeitures and penalties have been remitted from time immemorial and no intent to place them beyond the legislative or executive reach could be deduced from the words of section 100. It has already happened more than once that the revenue agent as the result of changes in the law has found his remedies destroyed and his suits abated. *French v. State,* 63 Miss. 651; *State v. Order of Elks,* 69 Miss. 895, 13 South. 255; *State v. Hill,* 70 Miss. 106, 11 South. 789; *Adams v. Fragiacomo,* 71 Miss. 417, 15 South. 798.

This last case is decisive that such repeal is not within section 100 of the constitution.

The repeal of a statute imposing a penalty prevents any prosecution, trial or judgment therefor unless a contrary intent is expressly shown. Sutherland Stat. Con. 223, § 166; *Mastronada v. State,* 60 Miss. 86.

Even if an appeal be pending the appeal as well as the action is dismissed. Sutherland § 166.

It is contended that Code 1892, § 3840, as brought into the

act of 1904 and Code 1906, gave the right to the governor and attorney general to remit penalties only where there was a delay as distinguished from a failure to pay the amount due. This distinction is technical, if not indeed fanciful. If we look to the title of the act of 1904, it will be seen that it changed the amount of damages to be paid by the collector upon failure both to make reports and to pay over taxes as required. The word "failure" is the word used in the clause imposing the liability. Very properly when payment is about to be made and the governor and attorney general are called on to remit, the failure is at an end and there will be merely a delay. Up to the time payment is to be made, there has been failure to pay which includes of course delay; but, when the payment is made or is being made, there is nothing of which the state can then complain except the delay to make the payment. Saunders and his sureties now wish to make payment and to be relieved of the penalty for the failure up to this time to pay. The suggestion that the last clause of section 4357 only applies to those cases of temporary delay for the month where the auditor makes the charge would be too narrow and strained a construction. The damages which the provision is dealing with are the damages imposed by the section.

Argued orally by *O. G. Johnson,* for appellant and by *W. W. Magruder,* and *C. H. Alexander,* for appellee.

WILLIAMSON, Special Judge, delivered the opinion of the court.

It stands decided in this cause that tax collector Saunders and the sureties on his official bond must pay into the county treasury the money collected by him as tax collector in the years 1890 and 1891, amounting to $2,370.31. This was determined by the opinion of this court on the final appeal, which reversed the decree of the chancery court dismissing the suit, and remanded the cause, with instructions to the lower court to enter

judgment for the sum of $2,370.31, with such damages as are allowed by law, to be ascertained by an accounting. The question whether damages are allowed by law, and the ascertainment of the amount of damages, if any, were left to be determined by the lower court. After the cause was remanded, the lower court entered a decree against Saunders and his sureties for $2,370.31, and added thirty per cent damages, and charged interest at six per cent per annum on the principal and damages from the time the money should have been paid to the date of the decree, the sum total being $6,135.36. From this decree the revenue agent appealed, and the defendants took cross-appeal.

The questions raised on this appeal and cross-appeal are as follows: First, should not the lower court have charged damages at the rate of thirty per cent per annum? Second, should any damages at all have been charged, under the facts in this case? Third, if damages were chargeable against the tax collector, were they not legally remitted by the governor and attorney general?

We answer unhesitatingly that it would have been error to have charged thirty per cent per annum damages in this case, even if it be admitted that the money withheld had been due the county for taxes collected. While the law in force at the time the settlements should have been made by the tax collector, in 1890 and 1891, imposed a penalty of thirty per cent per annum damages for failure to report and pay over taxes collected and due the county, when this suit was brought this law had been repealed by the act of 1904, and the penalty reduced from thirty per cent per annum damages to thirty per cent damages and six per cent interest on the principal and the damages. This had been the law since 1904, and is now the law. We cannot assent to the contention of counsel for the revenue agent that the latter clause of section 548, Code 1880, and the corresponding section brought forward in the Codes of 1892 (section 3840) and 1906 (section 4357) nullifies the act of 1904, which is brought forward as part of section 4357 of the Code of 1906.

These sections deal with matters of practice. After providing that suits to recover taxes not reported and paid in by the collector shall be preference cases and tried at the first term, it is provided that judgment shall be given for the amount of taxes collected and not paid in, "with thirty per cent per annum damages aforesaid." This section providing for thirty per cent per annum damages being repealed by the act of 1904 (Laws 1904, p. 216, c. 161), this clause, providing for judgment "with thirty per cent. per annum damages aforesaid," must fall with it. The manifest intention of the legislature in all this legislation was to change the penalty from thirty per cent per annum to thirty per cent and six per cent per annum. It was clearly an oversight in the legislature to bring forward the section with this clause in it, when the law reducing the penalty is brought forward at the same time. Both cannot consistently stand. The incidental clause must yield. This disposes of appellant's third assignment of error.

As to the first and second assignments of error, we are of the opinion that the lower court did not err in permitting appellees to file an amended answer, with exhibits thereto, and did not err in refusing to enter judgment on the mandate of this court without further pleadings or additional evidence.

We will dispose of the errors complained of by cross-appellants in discussing the second and third questions announced in the opening of this opinion to be raised on this appeal. "Should any damages at all have been charged against Saunders under the facts of this case?" We think not. The statute imposing the damages is highly penal, and must be strictly construed, and the conduct of the offender must be shown to come strictly within the terms of the law imposing the penalty. The object and purpose of the enactment of the statute imposing this heavy penalty was to force the prompt report and payment into the treasury after collection of all taxes due the county and state. In the agreed statement of facts, it is admitted that the funds withheld by Saunders were not taxes due the county, in the sense of the

word "taxes" used in the statute. One-third of the amount sued for was damages collected by the collector after December 15th, which would not go to the county, if rightfully collected, but to the tax collector. One-third of the amount was money paid to the county tax collector when the taxes were due to a separate school district and were not to be collected by the county tax collector. The county levy by the board of supervisors was $15 per thousand on all property in the county, except that in the separate school district, on which the levy was fixed at $12 per thousand. Failure to note this difference in the levy, and the calculation of the taxes within the school district at $15 per thousand, brought into the hands of the county tax collector money received from the taxpayers which was not due the county. One-third of the amount sued for came into the hands of the tax collector by the overpayment of the true amount of taxes due by a number of taxpayers, caused probably by miscalculation. All the money collected in the three ways above set out was properly receipted for by the collector and was properly entered on his cash book. All the taxes due the county, as shown by the tax books, assessment rolls, and county auditor's books, were promptly paid into the county treasury by Saunders; but these funds were not.

Having collected these funds in his official capacity as tax collector, it was Saunders' duty to pay it into the county treasury, and he will not be heard to make the defense that it was not due the county as taxes; yet we are of the opinion that the thirty per cent damages is not imposed by the law for non-payment of money collected in this way. But, even if this money had been collected and was due the county as taxes legally levied and assessed, it was error to charge the thirty per cent damages in view of the fact that the governor and attorney general, in accordance with the statute, made the proper certificate and the damages were remitted by the county auditor. There is nothing in the statute requiring the governor and attorney general to make the certificate at any particular time. It may be

done at any time before judgment or decree is rendered.    The amount sued for being money had and received by Saunders as tax collector, and which he should have paid into the county treasury, it will bear the legal rate of interest from the date it was due down to the date of payment.

The decree of the lower court is reversed, and the cause remanded, with instructions to the lower court to enter decree against Saunders and the sureties on his official bond for the sum of $2,370.31, with interest at the rate of six per cent per annum from the date when it was the duty of Saunders to have paid it into the county treasury.    Let the costs of this appeal be taxed against the appellant.

*Reversed.*