# STATE *v.* E. B. TRAYLOR.

[56 South. 521.]

1. BANKS AND BANKING. *Indictment. Statutory offense. Construction of statutes. Penal statutes.*

In a prosecution under Code of 1906, section 1169, which provides that if the president, manager, cashier, etc., of any bank or broker's office, or establishment conducting the business of receiving on deposit "the money or other valuable things of such persons," shall receive any deposit, knowing or having good reason to believe the establishment to be insolvent, without informing the depositor of its condition, he shall be imprisoned, etc. The indictment charged that accused, while cashier of a bank which was conducting the business of receiving on deposit "the money and other valuable things of other persons" and knowing that the bank was then insolvent willfully received from a certain person on deposit a sum of money, without informing him of the bank's condition. *Held,* that the indictment did not sufficiently charge the offense attempted to be defined by section 1169 of the Code of 1906 in that it substituted the word "other" for "such" the two words not being synonymous.

2. SAME.

Code of 1906, section 1169, only prohibits the officers of "banks or brokers' offices or establishments" conducting the business of receiving on deposit the money or other valuable things "of such persons" from receiving deposits when insolvent, and does not prohibit all persons, such as officers of a mercantile establishment from receiving deposits when they are insolvent.

3. CONSTRUCTION OF STATUTE.

In construing ambiguous statutes it is competent not only to look at the statute being construed but also at the law which was in existence prior to the enactment of the statute in question.

4. SAME.

The court has no right to add anything to or take anything from a statute, where the meaning of the statute is clear. It is only in cases where the statute is ambiguous that any rule for the determination or construction of statutes can be resorted to.

5. SAME.

Criminal statutes must be strictly construed and no person can be convicted of a crime unless the offense comes within the letter of the statute.

6. INDICTMENT. *Statutory offense.*

While it is not always necessary to follow the literal language of the act in framing indictments for statutory offenses, it is essential that either the same word or words equivalent in meaning and synonymous should be used.

7. STATUTES. *Construction.*

Criminal statutes may be either contracted or expanded by interpretation in their meanings so as to exempt from punishment those who are not within their spirit and purpose, but they can never be expanded against the accused, so as to bring within their penalties any person who is not within their letter.

8. STATUTES. *Power of courts. Legislature.*

The creation of crime is exclusively with the legislature and with the wisdom of its action the courts have no concern.

APPEAL from the circuit court of Simpson county.
HON. W. H. HUGHES, Judge.

E. B. Traylor was indicted for receiving money on deposit while acting as cashier of a bank, knowing of the bank's insolvency. From a judgment sustaining a demurrer to the indictment the state appeals.

The facts are fully stated in the opinion of the court.

*Carl Fox,* assistant attorney-general, for appellant.

The fourth ground of the indictment:

"The said supposed indictment does not charge that said bank was conducting the business of receiving on deposit the money or other valuable things or such persons as the president, manager, cashier, teller, assistant, clerk, or other employee or agent of any bank or broker's office or establishment, but instead charges that the bank was engaged in the business of receiving money and other valuable things of other persons."

The statute uses the adjective "such" as qualifying persons from whom it is a crime to receive deposits under the circumstances named. The only persons which are referred to in the statute before the phrase "such persons" is used, are the "president, manager, cashier, teller, assistant, clerk, or other employee or agent of any bank," etc. This section was brought forward from the Code of 1892, section 1080 (Code 1880, section 2814), without change in a single word except the mere inadvertent substitution of "such" for "other." Even if this section had been first enacted when the Code of 1906 became the law, it would be apparent upon reading the whole section that the word "such" was simply an error. The intention is, obviously, to protect the public—the depositors generally patronizing banks, broker's offices, and other establishments "conducting the business of receiving on deposit the money or other valuable things of . . . persons." The obvious purposes of the statute would be defeated, and it would be an absurdity, if it should be construed as applying only to those banks, brokers' offices, and other establishments "conducting the business of receiving on deposit the money or other valuable things" of the officers, agents, and employees of such institutions. Under that construction, the cashier, or even a mere agent or assistant would be under the necessity of informing the president or manager of the institution for which he worked, of its insolvency, when such president or manager offered to deposit his money therein, and would be guilty of no crime unless he had informed such person of that which he already knew. The court will correct such error by construction. See 2 Lewis Sutherland's Statutory Construction (2 Ed.), page 795, section 410 (260), and the cases cited in the notes.

In *Earhart* v. *State,* 67 Miss. 325, the act of March 9, 1888 (Laws of 1888, chapter 54, page 89), was construed by this court. That was entitled "An act to amend section 2985 of the Code of 1880, as refers to carrying con-

cealed weapons.'' Section 2985 of the Code of 1880 was, so far as the question is concerned, in part as follows:

''Any person not being threatened with, or having good and sufficient reason to apprehend an attack, or traveling (not being a tramp), or setting out on a journey'' shall be guilty of a misdemeanor if he carries certain concealed weapons.

Section 5, of chapter 54, of the act of 1888, amended that part of section 2985, which I have quoted, by striking out the words ''or having good and sufficient reason to apprehend an attack.'' Thus, as amended, section 2985, of the Code of 1880, denounced as a crime the carrying of certain concealed weapons by ''Any person not being threatened with, or traveling (not being a tramp), or setting out on a journey,'' etc. Judge Campbell, delivering the opinion said:

''We must hold, either that the legislature, in amending section 2985, of the Code, by an act approved March 9, 1888, nullified the section by making it senseless and uncertain, so as to be unenforceable, or that it committed a clerical mistake in striking out two words more than was intended, viz., the word ''an attack.'' The latter is the more probable, and to read the section as amended, retaining those two words, will accomplish what was manifestly the legislative purpose, and leave the law in force. We, therefore, adopt that view, and under it the section as amended will be read, ''any person, not being threatened with an attack . . . who carries concealed, etc.'' See the case of *Bobo* v. *Board of Commissioners,* 46 So. 819, 92 Miss. 792. The principle of that case, it seems to me, is exactly applicable to the case at bar.

*May & Sanders,* for appellee.

A diccussion of the various grounds of demurrer *seriatim* would perhaps needlessly protract this brief and we can put the court in possession of our views, adopted

by the trial court, by devoting the argument to four general propositions.

1st.   The statute as written clearly defines an offense.

2nd.   The indictment is not written in the language of the statute.

3rd.   Synonymous words with those in the statute are not employed in the indictment, and

4th.   The statute must be strictly construed.

It is to be borne in mind that the offense defined by the statute is made such solely by force of the statute. In *State* v. *Walker*, 88 Miss. 592, our court speaking through Mayes, Judge, at page 596, says:

"The crime created by the statute can only be committed by the president, manager, etc., of a bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of other persons; but when it is shown that the person of the designated class is conducting the business, etc., a single act of receiving one deposit completes the crime and the crime is committed just as often as the act is repeated."

Continuing on the same page:

"Conducting the business is one of the necessary links in the chain of facts necessary to constitute the crime. A person not conducting the business cannot commit the crime.   Therefore, as a matter of necessary description it must be alleged that the person charged was conducting the business."

Since the above decision was rendered section 1169, *supra,* superseded section 1089, Code 1892, which the court in the Walker case was construing, the change in the law being that if a member of several designated classes of officers or employees of a bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of such persons, whereas the prior statute extended the business of receiving on deposit the money or other valuable

things to other persons. In other words, the law prior to October, 1906, when the Code of 1906 went into effect, prohibited the officer or employee of the bank conducting the business of receiving on deposit the money of individual depositors, from receiving a deposit from a member of the body of the people into an insolvent bank which he knew or believed to be insolvent, without informing the depositor of the insolvency; whereas the law which became effective in the present Code, prohibited the officer or employee of a bank conducting the business of receiving on deposit the money or other valuable things of officers or employees of banks or brokers' offices from receiving a deposit from such officer or employee of a bank or broker's office into his insolvent bank which he knows or believes to be insolvent, without informing such officer or employee of his bank's insolvency.

The contention of the state that the legislature intended the statute to protect the public would be untenable in any case unless the bank was engaged in the business of receiving deposits from the public. The former statute covers banks engaged in the business of receiving deposits from the public but the present statute limits the business to that of receiving deposits from depositors or employees of banks or broker's offices. Let us illustrate. Suppose the Bank of D'Lo did not receive deposits from anyone except representatives of banks and brokers' offices—suppose the Bank of D'Lo was insolvent and that appellee was the officer of the designated class conducting the business of receiving deposits from such representatives and that on the occasion in question he had received a deposit for such representative and at such time he knew or had good reason to believe the Bank of D'Lo was insolvent but did not inform such representative of such insolvency—then, manifestly, under this statute, appellee would be guilty of a violation thereof. So then the statute makes complete sense, clearly defines a crime, and under certain facts, appellee could be in-

dicted, tried and convicted; but as said by Justice Mayes in the Walker case, *supra*, "A person not conducting the business cannot commit the crime, therefore as a matter of necessary description it must be alleged that the person charged was conducting the business," and under this announcement of our court the indictment must charge in the language of the statute, or in synonymous words, that "the president, manager, cashier, teller, assistant, clerk or other employee or agent of any bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of such persons." It must charge that the Bank of D'Lo was conducting the business of receiving deposits of such persons as those designated, to-wit, president, manager, cashier, teller, assistant, clerk or other employee or agent of a bank or broker's office or establishment, and it must charge that the defendant, appellee, was conducting such business, neither of which allegations are anywhere to be found in this indictment. In other words, the statute would cover any case of a bank operating a depository for banks and brokers' offices and if such depository become insolvent to the knowledge or belief of the officer or employee of the designated class or classes in charge and such officer or employee receive a deposit from a representative of one of its bank or broker's office customers without informing the representative who made the deposit as to the insolvency of the depository, then undoubtedly the crime would be committed. Thus the argument of the learned assistant attorney-general is manifestly unsound and the cases of *Earhart* v. *State,* 67 Miss. 325, and *Bobo* v. *Board of Commissioners,* 92 Miss. 792, are inapplicable for the reason that in both of those cases the statutes were senseless and uncertain, so as to render them unenforcible, whereas in the present controversy we have a perfectly valid statute applying to a limited number of cases, it is true, but certainly enforcible in such cases.

Statutory words may be used in an indictment. *Jesse v. State,* 28 Miss. 100; *Sullivan* v. *The State,* 67 Miss. 346.

If the words of the statute are not used in the indictment synonymous words must be used. *Harrington* v. *The State,* 54 Miss. 490; *Roberts* v. *The State,* 55 Miss. 421; *Richburger* v. *The State,* 90 Miss. 806; *State* v. *Presley,* 91 Miss. 377.

The words "such" and "other" cannot be said to be synonymous words, "such" being the word used in the statute and "other" being the word used in the indictment.

The statute must be strictly construed. In *Merrill* v. *Melchior,* 30 Miss. 516, the syllabus, which is sustained by the test, says: "Penal statutes cannot be extended by construction, so as to bring within their provisions cases not embraced in their plain letter." The court in that case cited Dwarris on Statutes, 736.

In *Foote* v. *Van Zant,* 34 Miss. 41, the court says "the statute must be construed strictly and cannot embrace cases not coming with the letter of the law." *Foote* v. *Van Zant,* 34 Miss. 40.

In *Monaghan* v. *The State,* 66 Miss. 514, our court speaking through Arnold, C. J., says:

"To sell liquor to a minor is what is forbidden by the statute. Merely to deliver to a minor, with notice that it is to be carried to an adult, is not a sale within the meaning of the statute. We cannot extend the terms of a criminal statute beyond its clear legal meaning. We cannot construe the word sell in the statute to mean something different from its ordinary legal import."

Again on page 515, it is said:

"If it appears from this view, that the statute under consideration may be easily evaded, that only proves the necessity of its amendment. It furnishes no excuse for applying by judicial construction what is palpably omitted from it." Citing *Seigle* v. *People,* 106 Ill.

In *West* v. *The State,* 70 Miss. 601, Campbell, C. J., speaking for our court. says:

"Evidence of a receipt by West in Pike county of an order for liquor, which he afterwards sent and got pay for, does not show a sale in that county, and therefore does not sustain the first count of the indictment. It is probable that "to sell" was used in the second section of chapter 62 of the Acts of 1890 under the mistaken notion that thereby receiving orders for liquor, to be sent into forbidden territory, was prohibited, but it is impossible for a court to ascribe such meaning to the words used, which is not sanctioned by either legal or popular usage. If the purpose was to make receiving an order for liquor an offense, different language should have been employed. It is inadmissible to give to words a meaning they do not contain in order to accomplish an object it may be supposed the lawmaker had in view . . ."

So, in this case, the assistant attorney-general is not authorized to hold appellee to a stricter accountability than the plain language of the statute, to accomplish the object he may suppose the lawmaker had in view, to-wit, the protection of the public as individual depositors instead of the protection of the public whose funds may be re-deposited by one of the officers or employees of their bank in a neighboring depository bank with disastrous result.

In State v. Richardson, 86 Miss. 441, the court construing a penal statute, says, "The statute must be strictly construed." Again on the same page, "The language of the statute will not be extended by construction." And again on the same page the court speaking of including what was not in the letter of the statute, says, "If, as a matter of policy, this ought to be done, it is for the legislature, and not for the courts, to make the necessary amendment to the statute."

In the second edition of Bishop on Statutory Crimes, section 220, we find the following:

"As stated by Hawkins, the doctrine is: 'No parallel case which comes within the same mischief, shall be con-

strued to be within purview of it (the statute), unless it can be brought within the meaning of the words." In slightly different language, though a case of this sort is fully within the mischief to be remedied, and is even of the same class and within the same reason as other cases enumerated in the statute, construction will not be permitted to bring it within the statute unless it is also within the statutory words."

Again, "Such statutes are to reach no further in meaning than their words; no person is to be made subject to them by implication, and all doubts concerning their interpretation are to preponderate in favor of the accused. Only those transactions are covered by them which are within both their spirit and their letter." Bishop on Statutory Crimes (2nd Ed.), sec. 94.

In *State* v. *Henry,* 87 Miss. 144, our courts speaking through Judge Calhoun, said:

"Loose construction would eventually mean ruin. Another principle to be carried along is that, if the language be plain, the announcement must enforce it, to whatever evil it may apparently lead; and a state legislature is an absolute despot, its acts on all subjects being free from any restriction whatever not found in the state or federal constitution. Congress has no power not confided to it. A legislature has all power not withheld from it."

Again on the same page, "Still another principle is that where the language is plain, subsequent action by the departments, or contemporaneous or antecedent history of the subject, cannot be appealed to for interpretation; but these may all be delved into to ascertain the meaning and force of terms or words—the real intent, from the language, being the very thing at last to be ascertained."

So in this case, where the legislature had the power to repeal the statute entirely, to repeal it in part or to enlarge it, the crime could be predicated of the conduct

of business of receiving deposits from representatives of banks or brokers' offices, as was done, or from the state or from the public generally.   Until the Code of 1880 no crime was predicated of the conduct of such business of receiving deposits from anyone and no crime under the statute can now be committed unless the bank or broker's office or establishment is conducting the business of receiving on deposit the money or other valuable things of such persons as the president, manager, cashier, teller assistant, clerk or other employee or agent of a bank or broker's office or establishment.   It is not for the court to say that the legislature did not intend to restrict the operation of the statute, it having the power to do so, and having done so by a word whose meaning is absolutely certain.   Two legislatures have assembled and adjourned without correcting the error if error it was.   But then in the language of the opinion last above quoted from, we are not permitted to look to antecedent history upon the subject for interpretation.

In *Yerger* v. *State*, 91 Miss. 822, our court, speaking through Mayes, Judge, says:

"The language of the statute is plain, unambiguous, and so written; and it is not for us to change it, or to hold that the legislature meant something different from what they plainly expressed in the law."

In *Adams* v. *Saunders*, 93 Miss. 520, the syllabus which is borne out by the opinion, is as follows:

"The statute, Code 1906, section 4357, imposing damages for the failure of a tax collector to pay over taxes collected, is penal and must be strictly construed and applies only where the conduct of the offender come clearly within the terms of the law."

In *Stewart* v. *The State*, 95 Miss. 627. our court, construing the antecedent of this identical statute, speaking through Smith, J., at page 634, says:

"Penal statutes must be strictly construed and the court can neither add to nor take from them.   *State* v.

*Dunning,* 130 Iowa, 678, 107 N. W. 927, and authorities therein cited.''

In this case, to sustain the principle contention of the learned assistant attorney-general, the rule here announced by our court would be twice violated, that is, we would take from the statute the word ''such'' and add to the statute the word ''other,'' and thereby render the conduct of appellee criminal, whereas to give the plain language of the statute its accepted, every-day, meaning and interpretation would let the appellee go free. This is not a case of a meaningless, unenforcible statute.

McLAIN, J., delivered the opinion of the court.

At the May term, 1909, of the circuit court of Simpson county, the appellee was indicted under section 1169 of the Code of 1906, wherein he was charged with a violation of this statute on the 7th day of July, 1908. The appellee demurred to the indictment, assigning several causes of demurrer. The demurrer was sustained and the defendant discharged. From this judgment the state appeals, and assigns as error the sustaining of the demurrer to the indictment.

Section 1169 of the Code of 1906, under which the defendant was indicted, reads as follows: ''If the president, manager, cashier, teller, assistant, clerk, or other employee or agent of any bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of *'such'* persons, shall remove or secrete or conceal the assets or effects of such establishment for the purpose of defrauding any of the creditors of the establishment, or shall receive any deposit, knowing or having good reason to believe the establishment to be insolvent, without informing the depositor of such condition, on conviction, he shall be imprisoned in the penitentiary not longer than five years.'' The indictment reads as follows: ''That on the 7th day of April, 1908, and for a long time

prior thereto, the Bank of D'Lo was a banking establishment and institution under the laws of the state of Mississippi, and was domiciled in the town of D'Lo, Simpson county, Mississippi; that on said 7th day of July, 1908, and for a long time prior thereto, the said Bank of D'Lo was conducting the business of receiving on deposit the money and other valuable things of '*other*' *persons;* that on said date the said Bank of D'Lo was insolvent, and that at said time, and for a long time prior thereto, E. B. Traylor was cashier of said bank at D'Lo, and said E. B. Traylor, on said 7th day of July, 1908, then and there knew that the said Bank of D'Lo was insolvent; that on the said 7th day of July, 1908, in the county and state aforesaid, the said E. B. Traylor, the cashier of said Bank of D'Lo, then and there being engaged in the business of receiving deposits of money and other valuable things of '*other*' persons and being then and there insolvent, did then and there, as cashier of said Bank of D'Lo, knowing the said bank to be then and there insolvent, knowingly, willfully, intentionally, fraudulently, and feloniously receive, as cashier aforesaid, from A. B. Francis, on deposit in said Bank of D'Lo, the sum of forty-eight dollars, etc., said money being the property of said A. B. Francis, as depositor in said Bank of D'Lo, and the said Traylor, etc., failed to inform the depositor Francis of the condition of said bank,'' etc. The second count in the indictment is the same as the first, except that it charges that the defendant had good and sufficient reason to believe the said Bank of D'Lo was then and there insolvent, and that he failed and neglected to inform the depositor of the condition of the bank.

The fourth ground of the demurrer to this indictment is as follows: ''The said supposed indictment does not charge the said bank was conducting the business of receiving on deposit the money or other valuable things of '*such persons*' as the president, manager, cashier, teller, assistant, clerk, or other employee or agent of any

bank or broker's office or establishment, but instead charges that the bank was engaged in the business of receiving money or other valuable things of *'other persons.'* " It is clear, from the reading of section 1169, that the statute creates two different offenses. The first is, "shall remove, or secrete, or conceal the assets or effects of such establishment for the purpose of defrauding any of the creditors of the establishment;" second, "for receiving any deposit, knowing or having good reason to believe the establishment to be insolvent." The indictment in this case is on the second offense described, to wit, receiving of a deposit.

It is perfectly competent, in fact, necessary, in order that we may properly understand what the legislature meant by this section, not only to look at the present law, but also at the law which was in existence prior to the enactment of this statute. The crime sought to be punished was not a crime at common law; upon the other hand, it is purely statutory. The law is first found in section 2814 of the Code of 1880, and was brought forward in the Code of 1892 as section 1089. Section 1089 is a rescript of 2814. The statute, as it existed prior to the adoption of the Code of 1906, provided that if the president, manager, etc., of any bank or broker's office, or establishment conducting the business of receiving the money or other valuable things of *"other"* persons on deposit, etc.; whereas the Code of 1906, under which appellee was indicted, provides that "conducting the business of receiving on deposit the money or other valuable things of *'such'* persons" shall receive on deposit, etc. The question therefore arises: What did the legislature mean by using the word "such" in the present statute, instead of the word "other" in the former statute? In order to ascertain this, it is necessary, as said above, not only to look at the former law, but also to see what construction the old law had at the time of the adoption by the legislature of the new statute.

In *State* v. *Walker,* 88 Miss. 596, 41 South. 8, decided in April, 1906, this court in construing this statute, held that: "The statute plainly says he shall be guilty of the crime while conducting the business named by the statute. 'Conducting business' is one of the necessary links in the chain of facts necessary to constitute the crime."

In other words, under this construction placed upon this statute by this court, it is not every one who receives a deposit knowing of the insolvent condition of the business engaged in, but he must be conducting the business "of any bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of other persons." It therefore follows that if A. is the president, cashier, clerk, or other employee of a mercantile establishment, the business of which is to buy and sell merchandise, and not to receive on deposit money or other valuable things for its customers, A. will not be guilty of a crime if he receives on deposit money or other valuable things, although he may know the establishment in which he is employed is insolvent, and fails to inform the depositor of such condition. It is therefore manifest that the legislature intended solely to prohibit "banks or brokers' offices or establishments, conducting the business of receiving on deposit the money or other valuable things of '*such*' persons, from receiving the deposits when in an insolvent condition." It therefore necessarily follows that, under the letter of the statute, the legislature created a well-defined crime. The statute, therefore, is not senseless nor meaningless, and the question arises: Have the courts the right to create a law the violation of which is a crime, or to say that the legislature intended to create a different crime from the one specified in the statute?

The court cannot create a law. Its sole power is to enforce the statute as written by the legislature. The

court has no right to add anything to or take anything from a statute, where the meaning of the statute is clear. It is only in cases where the statute is ambiguous that any rule for the determination or construction of statutes can be resorted to. The word *"such"* is not a synonym of the word *"other."* It is difficult to conceive of where the words can be used interchangeably.

We know of no rule of law which will justify the court in convicting a person of any crime, unless the offense comes under the letter of the statute. The law is that criminal statutes must be strictly construed. Such has been the law from time immemorial.

In *Harrington* v. *State,* 54 Miss. 490, it is held by this court that an indictment under section 2489, Code 1871, for the alteration of the record, must charge that the alteration was "wittingly" done, and, if charged that it was "willingly," is fatally defective; that, while it is not always necessary to follow the literal language of the act in framing indictments for statutory offenses, it is essential that either the same words, or words equivalent in meaning and synonymous, should be used. To the same effect are *Roberts* v. *State,* 55 Miss. 421; *Richburger* v. *State,* 90 Miss. 806, 44 South. 772; *State* v. *Presley,* 91 Miss. 377, 44 South. 827. In *Monaghan* v. *State,* 66 Miss. 513, 6 South. 241, 4 L. R. A. 800, this court held that "it will not yield for considerations of expediency, and supply by judicial construction what is palpably omitted from the statute." And this court in *State* v. *Richardson,* 86 Miss. 439, 38 South. 497, held that a penal statute must be strictly construed. In *Yerger* v. *State,* 91 Miss. 802, 45 South. 849, it was held that, where the language of a statute is plain and unambiguous, the court cannot hold that the legislature meant something different from the true meaning of the terms used; and in *Adams* v. *Saunders,* 93 Miss. 520, 46 South. 960, this court said that the statute then under consideration was penal and must be strictly construed, and applies only where

the conduct of the offender comes clearly within the terms of the law; and *State* v. *Henry,* 87 Miss. 125, 40 South. 152, 5 L. R. A. (N. S.) 340, *et seq.,* holds that a state statute, the language of which is plain, must be enforced as written, regardless of the evil to which it might lead, that "a state legislature is an absolute despot, its acts on all subjects being free from any restriction whatever not found in a state or federal Constitution, and that it is the duty of the courts to enforce the law as written by the legislature, and not what it (the court) may think should be the law." This court in *Stewart* v. *State,* 95 Miss. 627, 49 South. 615, speaking through Mr. Justice Smith, construing this identical statute, says: "Penal statutes must be strictly construed, and the courts can neither add to nor take from them."

It has been said that it is not the words of the law, but the internal sense of it, that makes the law, and our law, like all others, consists of two parts, namely, body and soul. The letter of the law is the body of the law, and the sense and the reason of the law is the soul of the law; and it often happens, when you know the letter, you know not the sense, for sometimes the sense is more confined and contracted than the letter, and sometimes it is larger and more extensive. Therefore in the construction of criminal statutes, as has been said in Bishop on Statutory Crimes, section 230: "The doctrine is that, in favor of accused persons, criminal statutes may be either, according to the form of the provision, contracted or expanded by interpretation in their meanings, so as to exempt from punishment those who are not within their spirit and purpose, while at the same time, as the last section shows, and as explained in the last chapter, they can never be expanded against the accused, so as to bring within their penalties any person who is not within their letter. Otherwise expressed, whenever the thing done is not within the mischief evidently intended by the statute, though it is

within its words, the doer is not punishable, while, on the
other hand, one may defend himself by showing, if he
can, that either the main part of the enactment or some
exceptive clause thereof is so unguardedly worded as to
open an escape for him through the letter, his act being
still a complete violation of its spirit.'' Or, as stated by
*Hawkins* (2 Hawk. P. C., chapter 18, section 16) :    "No
parallel case which comes within the same mischief shall
be construed to be within the purview of the statute, un-
less it can be brought within the meaning of the words.''
"In slightly different language, though a case of this
sort is fully within the mischief to be remedied, and is
even of the same class and within the same reason as
other cases enumerated in the statute, construction will
not be permitted to bring it within the statute, unless it
is also within the statutory words.''    Bishop on Statu-
tory Crimes, section 220, referring to numerous author-
ities.

The casual reader is apt to seize and emphasize that
portion of the statute which says "shall receive any de-
posit,'' and the statute does not specify from whom the
deposit may be received, and hence it may be argued
that the condemnation is directed against the receiving
of any deposit from any one.    It may be, and doubtless
was, the intention of the legislature to prohibit the re-
ception of any deposit from any one; but it is absolutely
certain, from the reading of the statute, that the condem-
nation was directed, not simply to the receiving of de-
posits, but against the persons engaged in a certain bus-
iness—that business being any bankers, brokers, etc.,
engaged in the business of receiving on deposit the money
of *such* persons.

To hold this indictment good, it would be necessary
to discard and ignore every known rule of grammar—
the science which treats of the principles of languages,
the study of the forms of speech, and their relations to
one another.    There is no way or method known to edu-

cated man by which they can interpret human speech, except by construing the words in their relation to one another. Talleyrand, the greatest diplomat of Europe, at least in his day, said: "Words are vehicles by means of which we conceal our thoughts." This may be true in the diplomatic service, but it is not to be permitted either in the legislative or judicial department of the government. If the legislature intended to cover the contention of the state in this case, it acted upon Talleyrand's idea that words, instead of expressing, conceal one's thoughts. The human fraud may use words for the purpose of concealing his thoughts, but the honest man uses only such words as express his intentions. We cannot fritter or pare away what was perfectly and intelligently expressed by the lawmaker, in order to effectuate what we may suppose was the legislative will.

It is insisted by the state that the use of the word "such" for "other" was a clerical error. But we do not know of any rule or principle which justifies us in so holding. It must be presumed that the legislature intended to say just exactly what it did say. As said above, the courts have no right to enact a law; but the creation of a crime is exclusively with the legislature. It may be that the legislature in enacting this statute did a very unwise thing—that it should make punishable the receiving, by the president, cashier, etc., of any bank on deposit the money of *any* person, knowing the insolvency of the bank and without informing the depositor of its condition. In our judgment the statute should be amended so as to read, instead of "such" persons, "other" persons, thus making it unlawful for any one engaged in the banking business or brokers' business to receive on deposit the money of *other* persons while the bank is insolvent, etc.

In conclusion, to put the case in a nutshell: The crime defined by the statute is that certain persons conducting a certain business of receiving on deposit money of

"*such*" persons, etc.; whereas, the indictment charges certain persons conducting a certain business of receiving on deposit money of "*other*" persons—clearly and manifestly a different offense.                    *Affirmed.*

SMITH, J. (dissenting).

I am unable to concur in the conclusion reached by my brethren in this case. The only change made in bringing forward section 2418, Code of 1880, into the Code of 1892, and from that Code into the Code of 1906 as section 1169, which section is the one upon which this prosecution is founded, is that the word "such" was substituted for the word "other" between the words "or" and "persons" in the fourth line thereof. Because of this substitution of the word "such" for "other," which I think was manifestly a mere clerical error, appellant contends, first, that the only person who can commit this crime is an officer or agent of a bank, etc., engaged in receiving deposits from officers or agents of banks, etc., engaged in a like business, and, second, that in order for the crime to be committed the person making the deposit must be an officer or agent of a bank, etc., engaged in receiving deposits from officers or agents of banks, etc.

The first of these contentions my brethren have upheld; but I am not sure, from the language of their opinion, whether they mean to uphold the second or not. This language is as follows: "It may be, and doubtless was, the intention of the legislature to prohibit the reception of a deposit from any one; but it is absolutely certain, from a reading of the statute, that the condemnation was directed, not simply to the receiving of deposits, but against the persons engaged in a certain business," etc. When any statute is brought under review by the courts, the only duty they have to discharge is to ascertain the legislative intent, as contained therein, and to give effect thereto. When the language of the statute is plain and unambiguous, it is unnecessary to invoke any rule of con-

struction, for in that event the statute itself is its own
best interpreter. The first thing to be ascertained, there-
fore, is whether the language of the statute is ambigu-
ous. That portion of the statute which describes the
character of persons who can commit the crime defined,
disconnected from the remainder of the statute, is plain
and unambiguous; for the word "such," so considered,
plainly restricts the commission of the crime to agents
and officers of banks, etc., engaged in receiving deposits
from agents and officers of banks, etc., engaged in the
like business. So, also, when so considered, is that por-
tion of the statute which describes the character of per-
sons for whose benefit the statute was passed; for by it
all depositors, irrespective of the business in which they
are engaged, are protected. The ambiguity arises when
the statute is considered as a whole. When this is done,
it becomes doubtful whether the legislature intended to
protect all members of the general public in making de-
posits in any bank, etc., or all depositors in making de-
posits in banks, etc., provided such banks, etc., are en-
gaged in receiving deposits from the officers and agents
of other banks, etc., or only the officers and agents of
banks, etc., in making deposits in other banks, etc., en-
gaged in receiving deposits from the general public, or
only the officers and agents of banks, etc., in making de-
posits in banks, etc., receiving deposits only from such
officers and agents. All but one of these constructions
reduce the statute to an absurdity and make it of no prac-
tical value, a result which the legislature must not be
presumed to have intended. 26 Amer. & Eng. Ency. Law
(2d Ed.), 648.

In order, therefore, to ascertain the true legislative
intent, it becomes necessary for us to examine the stat-
ute as it stood in the former Codes, and from this ex-
amination it becomes manifest that prior to the adoption
of the Code of 1906 the statute was designed to protect
all members of the general public in making deposits in

any bank, etc., and that it had been on the statute books for such a length of time as to become a part of the settled policy of the state. This being true, unless the present language of the statute is plainly and unambiguously to the contrary, we must not presume that the legislature, in bringing it forward into the Code of 1906, intended to alter it in such manner as to radically change this design and settled policy. Interpreted in this light, it seems to me that it is manifest that the legislative intent as it appears in the Code of 1906 was to protect all members of the general public in making deposits in any bank, etc. I am therefore of the opinion that the use of the word "such" was a mere clerical error, for which the word "other" should be read. Criminal statutes must be strictly construed, and the courts have no power to add to or take from them, or, for that matter, to add to or take from any other statute; but this does not mean that such statutes are to be construed with such technical strictness as to defeat the purpose of ascertaining the true meaning thereof. The rule is universal, so far as I am aware, that the true meaning of statutes, when ascertained, will be enforced by the courts, even to the extent of correcting errors in the language in which they are couched. "Legislative enactments are not, any more than other writings, to be defeated on account of mistakes or omissions, provided the intention of the legislature can be collected from the whole statute." 2 Lewis' Sutherland on Statutory Construction (2d Ed.), 410. And "where it is manifest upon the face of an act that an error has been made in the use of words, the court may correct the error and read the statute as corrected, in order to give effect to the obvious intention of the legislature." 26 Amer. & Eng. Ency. Law (2d Ed.), 653 to 655, inclusive; *Earhart* v. *State,* 67 Miss. 325, 7 South. 347; *Bobo* v. *Commissioners,* 92 Miss. 792, 46 South. 819; *State* v. *Louisville & Nashville R. Co.,* 53 South. 454.　　　*Suggestion of error filed and overruled.*