### BRYANT v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. January 8, 1901.)

#### No. 947.

PUBLIC LANDS—CUTTING TREES.

Rev. St. § 2461, prohibiting the cutting or removing of oak trees or other timber from the public lands of the United States, with intent to export, dispose of, use, or employ the trees or timber for any purpose except for the use of the navy, is not violated by boxing pine trees on the public lands for the purpose of the manufacture of turpentine, since it is not a cutting of the trees, within the meaning of the statute.

In Error to the Circuit Court of the United States for the Northern District of Florida.

Blount & Blount and C. H. Laney, for plaintiff in error.
W. W. Howe and John Eagan, for defendant in error.

· Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The distinguished counsel who appeared for the defendant in error in the opening paragraphs of his brief concisely and correctly states this case, as follows:

"Under assignments of errors in record, and set out and discussed in brief for plaintiff in error in this case, the question is squarely presented to the court as to whether cutting and boxing pine trees on public lands of the United States for turpentine purposes is a criminal offense, within the meaning of section 2461 of the Revised Statutes of the United States. The information filed in this case, and upon which the defendant was convicted, is based on the last clause of this said section 2461, which is as follows, to wit: 'Or if any person shall cut, or cause or procure to be cut, or aid, or assist, or be employed in cutting any live oak or red cedar trees, or other timber on, or shall remove, or cause or procure to be removed, or aid, or assist, or be employed in removing any live oak or red cedar trees or other timber, from any other lands of the United States, acquired, or hereafter to be acquired, with intent to export, dispose of, use, or employ the same in any manner whatsoever, other than for the use of the navy of the United States; every such person shall pay a fine not less than triple the value of the trees or timber so cut, destroyed, or removed, and shall be imprisoned not exceeding twelve months.' "

This question has not been passed upon by the supreme court, or by any of the circuit courts of appeals, so far as we know. The only case reported to which we have been referred, or with which we are acquainted, in which the question here presented arose, is the case of U. S. v. Leatherberry (D. C.) 27 Fed. 606, in which the learned judge of the district court used the following language:

"The object and purpose of the statute [section 2461] is to protect the public timber. This purpose would, in a great measure, be defeated, should the view of defendant's counsel prevail. The language of the statute is, 'cut, or procure to be cut, or aid or assist or be employed in cutting,' etc., 'with intent to export, dispose of, use, or employ the same in any manner whatsoever other than for the use of the navy of the United States.' Certainly cutting the timber in order to extract its gum and sap for one's private use is cutting it with intent to use and employ it in a manner other than for the navy of the United States."

Under our judiciary system as it was then constituted, this case was taken to the circuit court by a writ of error, and the judgment of the district court was reversed. Leatherbury v. U. S., 32 Fed. 780. The circuit court which pronounced this judgment of reversal was held by the circuit judge (now senior circuit judge of this circuit) sitting alone. In the opinion which he delivered he used the following language:

"It is very difficult to make out that the boxing of a pine tree for turpentine, which is well understood in turpentine districts to mean cutting into a tree, more or less deep, in such a way as to cause the resin or gum of the tree to run and gather in the basin formed at the bottom of the cut, is a cutting of the tree in the sense in which the word 'cut' is used in the statute, where it evidently means to 'sever or. fell. And if this should be satisfactorily answered, and it be shown that the cutting of the statute includes any cutting, however slight, then it seems that the requisite intent, to constitute an offense, is wholly lacking. It is not even plausible to argue that an intent to procure turpentine from a tree is an intent to dispose of the timber. It is not necessary to consider whether, under the statute referred to, the value of the resin obtained from a pine tree, delivered at a distillery, is a proper circumstance to be considered in determining the value of the tree."

It will be conceded that, as a precedent, the decision of the appellate court, though that court consisted, at the time the decision was rendered, of a single judge, is entitled to the greater weight. A care-

ful examination of the whole of each of the opinions—the one by the district judge sitting in the district court, and the other by the circuit judge sitting in the circuit court—satisfies us that the weight of the reasoning, also, is with the opinion of the circuit court.

The provision of the section immediately preceding section 2461, the last clause of which this case requires us to construe, authorizes the president of the United States to "employ so much of the land and naval forces of the United States as may be necessary effectually to prevent the felling, cutting down, or other destruction of the timber of the United States in Florida, and to prevent the transportation or the carrying away any such timber as may be already felled or cut down." The act of March 2, 1831, contains the provisions which appear in section 2461, in which the words "cut, or cause or procure to be cut, or aid, or assist, or be employed in cutting," etc., are used. In the next following section this language appears: "If the master, owner or consignee of any vessel shall knowingly take on board any timber cut on lands," etc. A part of the penalty denounced for violating the provisions of section 2461 is a fine not less than triple the value of the trees or timber so cut, destroyed, or removed. In the opinion in Leatherbury v. U. S., supra, Judge Pardee called attention to the fact that section 2461, Rev. St., was originally the first section of an act approved March 2, 1831, entitled "An act to provide for the punishment of offenses committed in cutting, destroying, or removing live-oak and other timber or trees reserved for naval purposes." Some of the approved definitions of the word "timber" are "the body, stem, or trunk of a tree"; and others, much used in the western part of the United States, "woods or forest; wooded land." As used in botany, the word "tree" means any perennial woody plant of considerable size, usually over 20 feet high, and growing with a single trunk. When used with reference to the appropriating of the plant products of land, the word "cut" is defined to mean to sever and cause to fall for the purpose of gathering; to hew; to mow or reap. "Send me also cedar trees, fir trees, and algum trees, out of Lebanon; for I know that thy servants can skill to cut timber in Lebanon." 2 Chron. ii. 8. We note that in the affidavit which supports the information in this case the acting special agent of the general land office, in preferring his seven several charges against the defendant, shows that the defendant did "unlawfully cut, and cause and procure to be cut, from the following described public lands of the United States"; and the language of each of the seven several counts in the information likewise charges that the defendant did "unlawfully cut, and cause and procure to be cut, from the following described public lands of the United States." While it is true that penal statutes should be strictly construed, it is undoubtedly the duty of the courts to look to the mischief intended to be prevented, and to take into consideration the character of the remedy proposed to be applied, in doing which the mere letter must yield to the manifest spirit, and give to the provisions that measure of restriction or expansion which a sound, reasonable reading of the whole requires of each particular. It is conceded that the purpose of the act in question is to protect

the public lands. Taking a comprehensive view of the various provisions to which we have alluded, and bearing in mind the definitions we have suggested as applicable to the terms used in the statute, the legislative intent seems to have been to secure that protection by preventing the unauthorized cutting down, removal, or destroying of the timber trees growing thereon, and the unauthorized removing and destroying of such timber trees as had been already felled or cut down, or as might be felled or cut down from time to time; and it is not at all apparent to us that it was the intent of the legislature to make the "cutting and boxing of pine trees on public lands of the United States for turpentine purposes" a criminal offense. We think it is not a matter of common knowledge that such cutting and boxing of pine trees destroy the value of the trees as timber, or that it has a tendency even to retard the growth of the trees. It is, however, we think a matter of common knowledge, of which we may take notice, that on March 2, 1831, and long before that date, the "turpentine business" was an industry most prevalent in all the parts of the country where there were pine-growing public lands; and, if it had been the intention to protect these public lands from the ravages of that business, it would have been easy to make that intention clear by the use of appropriate words. We are therefore constrained to hold that the cutting and boxing of pine trees on public lands of the United States for turpentine purposes is not a criminal offense, within the meaning of section 2461 of the Revised Statutes of the United States. As the record shows that on the trial in the court below the court, of its own motion, gave the following instruction to the jury, to wit: "If you find that the defendants, within three years before the filing of the information, boxed, or procured to be boxed, trees on the land mentioned in the indictment, for the purpose of using or disposing of the turpentine taken therefrom, you will find them guilty,"—which instruction was duly excepted to, and is here assigned as error, it follows that the judgment of the circuit court is reversed, and the case is remanded, with the direction to award the defendant a new trial.