# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-01008-SCT

*JANICE MICHELLE WILCHER a/k/a JANICE WILCHER*

*v.*

*STATE OF MISSISSIPPI*


DATE OF JUDGMENT:              06/12/2015
TRIAL JUDGE:                   HON. MARCUS D. GORDON
COURT FROM WHICH APPEALED:     SCOTT COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       JERRY L. BUSTIN
                               RICHARD POOLE NOEL, III
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY:             MARK SHELDON DUNCAN
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 03/23/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Janice Wilcher appeals her conviction in the Scott County Circuit Court for retaliation against a public servant in violation of Mississippi Code Section 97-9-127, for making a false representation of rape against Deputy Michael Townsend of the Scott County Sheriff's Department. Wilcher claims Section 97-9-127 is unconstitutionally vague. Wilcher further claims the State failed to prove that Deputy Townsend suffered any actual harm, as alleged in the indictment. Finding no merit in either issue, we affirm.

## FACTS

¶2.     Wilcher was indicted by the Scott County grand jury as follows:

Janice Michelle Wilcher . . . did willfully, intentionally, knowingly and feloniously commit the offense of retaliation against a public servant, to-wit: Deputy Michael Townsend, . . . by making false allegations of rape against Deputy Michael Townsend, said false allegations that served to harm the professional reputation or standing as a law enforcement officer . . . , and which false allegations were made in retaliation against Deputy Michael Townsend for his having caused Janice Michelle Wilcher to have been previously cited, charged or arrested for crimes or law violations which were brought against Janice Michelle Wilcher in his capacity as a lawful public servant, contrary to and in violation of Section 97-9-127, Miss. Code Ann. (1972) . . . .

¶3.     Wilcher's trial adduced the following facts. On May 20, 2014, around 5:00 in the afternoon, Deputy Townsend was on patrol on Hillsboro Road in Morton, Mississippi. He observed a blue SUV speeding and about to run off the highway. Deputy Townsend turned on his blue lights, turned around in the road, and followed the SUV. The SUV fled, and Deputy Townsend pursued the SUV until it ran off the road and stopped in a wooded area. When Deputy Townsend arrived on the scene, he ordered Wilcher out of her vehicle, placed her under arrest, and put her in the back of his patrol car. This was Deputy Townsend's third encounter with Wilcher within the past six months, while working in a law- enforcement capacity.

¶4.     Larry Meeks lived in a house near where Wilcher came to a stop. Meeks was outside mowing his yard at the time and saw Wilcher drive up the road at a high rate of speed. Meeks testified that Wilcher had attempted to make a right turn off the road but was forced to stop by a "big pile" of dirt sitting just off the road. Meeks walked over to where Wilcher and Deputy Townsend were located, which Meeks said was approximately one minute from

2

the time Wilcher's vehicle came to a stop. When Meeks arrived, Wilcher was sitting in the back of the patrol car. Meeks testified that he knew Deputy Townsend, having met him for the first time about a month prior to the incident. Deputy Townsend and Meeks's niece were engaged to be married at the time of the incident. They married on May 24, 2014. Meeks also recognized Wilcher, having seen her around town a few times.

¶5. When Meeks arrived, Deputy Townsend asked Meeks to stay until the tow truck showed up, which Deputy Townsend had just requested with his police radio. Meeks left after the tow truck arrived on the scene.

¶6. Once the tow truck left with Wilcher's vehicle, Deputy Townsend transported Wilcher directly to jail, where she was booked for "possession of paraphernalia" and "failure to yield to blue lights."

¶7. While at the jail, Wilcher started yelling to the jailers that Deputy Townsend had raped her. Deputy Townsend released Wilcher to the booking officers and did not have any further contact with her. Wilcher was booked into the facility and stayed overnight.

¶8. The next morning, Wilcher was belligerent, loud, and shaking the jail bars. Wilcher told the booking supervisor, Sergeant India Walker, that she was pregnant by "Polecat" (Deputy Townsend's nickname) for a month and a half and she was miscarrying. Wilcher's family bonded her out that day.

¶9. After her release from jail, Wilcher drove to Scott County Regional Hospital and reported she had been raped. Because the hospital did not have a sexual assault nurse examiner on staff at the time, Wilcher was advised to go to Lackey Hospital in Forest,

3

Mississippi. Wilcher declined to go to Lackey Hospital because she said did not trust that hospital for personal reasons. She later went to the University of Mississippi Medical Center instead.

¶10. Before leaving Scott County Regional Hospital, Wilcher spoke to Investigator Donald Simpson with the Scott County Sheriff's Office. Investigator Simpson and another deputy were dispatched to Scott County Hospital to interview Wilcher about the reported rape. Wilcher reported to Investigator Simpson that when she had pulled over for Deputy Townsend, he had gotten her out of the vehicle, pushed her shirt and bra up and began sucking and pinching her breasts. Wilcher stated that someone across the road had noticed a commotion and had come over, so Deputy Townsend placed her in the back of the patrol car while he talked to the man. She said, after the man left, Deputy Townsend pulled her out of the patrol car and she struggled with him, so Deputy Townsend turned her around and placed handcuffs on her so she could not resist. Wilcher said Deputy Townsend then moved her to the back seat of the patrol car and took off her belt, pulled down her pants, and raped her. After he finished, Wilcher got dressed; the tow truck pulled up a few minutes later.

¶11. Investigator Simpson recovered all the clothes Wilcher was wearing at the time of her arrest and alleged rape and sent them to the state crime lab. Later that same day, Deputy Townsend received a phone call from Investigator Simpson, informing him that he was being investigated for Wilcher's allegations of rape. Detective Townsend voluntarily submitted a blood sample and wrote a report regarding Wilcher's arrest and the surrounding circumstances. Investigator Simpson interviewed Deputy Townsend twice regarding the rape

4

allegations. The results of the crime lab analysis were negative for Deputy Townsend's DNA and seminal fluid on any of Wilcher's clothing.

¶12. On June 17, 2014, Wilcher came to Investigator Simpson's office and said she no longer wished to pursue charges against Deputy Townsend because she had been raped before and she was too tired to press the issue. Investigator Simpson then advised Wilcher there was ample evidence to move forward against her with a charge for retaliation against a public servant.

¶13. Shortly thereafter (the record does not specify when), Wilcher was charged with retaliation against a public servant. On July 9, 2014, Investigator Simpson and another deputy interviewed Wilcher again while she was in custody for the instant offense. Wilcher was advised of her rights and signed a waiver of those rights. Wilcher gave a written statement recanting her allegation of rape against Deputy Townsend. In her statement, Wilcher apologized for making the allegations and stated she was on drugs and had been off her medications.

¶14. During the course of his investigation, Investigator Simpson received several letters written by Wilcher to different people apologizing and asking for forgiveness for the rape allegations against Deputy Townsend. These letters were submitted to the jury at trial.

¶15. Wilcher testified in her own defense at trial. She told the jury Deputy Townsend had put her in jail a total of seven or eight times, and she did not know why. She testified he had called her bad names in front of her children and had said she was a drug dealer. She testified that one time when he had stopped her, he had put her in the back of his patrol car

5

and shone his flashlight between her legs. She admitted that Deputy Townsend had found an open container of vodka and a bag of marijuana in her car.

¶16. Wilcher told the jury that, on the date in question, Townsend pulled her over and removed her from her car. She claimed Townsend lifted up her shirt and fondled her. She said Deputy Townsend then asked her what kind of sexual favors she performs for drugs, and she told him she does not do those things. She said when Meeks came down, she was screaming and banging on the window glass.

¶17. Wilcher testified that, once she arrived at the station, she screamed for days that she had been raped and officers placed her in lock-down in a suicide room. Wilcher told the jury she had recanted her claim of rape against Deputy Townsend because she had been in a cell for five months with a hole in the floor where she had to smell her own feces and she had developed scabies. Wilcher said she had recanted the rape allegation because she was tired and they would not let her out of jail unless she did so.

¶18. After the close of evidence, the jury found Wilcher guilty of retaliation against a public servant. This appeal followed, with the claims that (1) Section 97-9-127 is unconstitutionally vague, and (2) the State failed to prove that Deputy Townsend suffered actual harm. Additional facts, as necessary, will be related in the analysis.

## ANALYSIS

### I. Whether Section 97-9-127 is unconstitutionally vague.

¶19. Section 97-9-127 states, as follows:

(1) A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by any unlawful act in retaliation for

6

anything lawfully done in the capacity of public servant, witness, prospective witness or informant.

(2) Retaliation is a Class 2 felony.

Miss. Code Ann. § 97-9-127 (Rev. 2014).

¶20. Wilcher claims Section 97-9-127 is unconstitutionally vague and should be struck. Wilcher contends the term "harm" as contained in the statute is vague because it is not defined with sufficient definiteness so that ordinary people can understand what conduct is prohibited and it encourages arbitrary and discriminatory enforcement.

¶21. In making her argument that the statute is vague, Wilcher contrasts *Young v. State*, 119 So. 3d 309 (Miss. 2013), in which this Court upheld a retaliation conviction based on the charge that a defendant arrested for driving under the influence (DUI) thereafter threatened the arresting officer with physical violence in retaliation for the defendant's DUI arrest.[1] Wilcher contends *Young* is distinguishable because the "harm" threatened there was real; but here, Wilcher made a claim of rape, which neither harmed nor threatened to harm Deputy Townsend.

¶22. Wilcher contends that damaging the professional reputation and standing of a law enforcement officer is a civil cause of action, not a criminal one. If Deputy Townsend believed he had been damaged because of an unsubstantiated rape claim against him, then he should have sued in a private capacity for libel or slander.

¶23. Wilcher also contends that a false allegation of rape is protected speech under the First Amendment.

---

[1] The constitutionality of Section 97-9-127 was not challenged in *Young*.

¶24. At the outset, Wilcher simply points to the First Amendment. She cites no legal authority and provides no argument in support of her assertion that Section 97-9-127 infringes upon it.

¶25. "It is the duty of counsel to make more than an assertion, they should state reasons for their propositions, and cite authorities in their support." *Clark v. State*, 503 So. 2d 277, 280 (Miss. 1987) (quoting *Johnson v. State*, 154 Miss. 512, 122 So. 529 (1929)). "Numerous cases support the position that an unsupported assignment of error will not be considered." *Id*. (citing *Hunter v. State*, 489 So. 2d 1086, 1090 (Miss. 1986); *Kelly v. State*, 463 So. 2d 1070, 1072 (Miss. 1985); *Redmond v. State*, 457 So. 2d 1344, 1346 (Miss. 1984)).

¶26. Facial challenges to a statute on First Amendment grounds generally implicate the "overbreadth doctrine," a legal concept formulated by the United States Supreme Court which allows a challenge to a statute on its face as unconstitutionally overbroad if it "does not aim specifically at evils within the allowable area of State control but, on the contrary sweeps within its ambit other activities" protected by the First Amendment. *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S. Ct. 736, 742, 84 L. Ed. 1093 (1940). This doctrine is "'strong medicine'" and should be "employed . . . with hesitation, and then 'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)). Therefore, courts "vigorously enforce[] the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292, 128 S. Ct. 1830, 170 L.

Ed. 2d 650 (2008). Consequently, the petitioner must demonstrate from the text of the statute and actual fact that the statute's overbreadth is both real and substantial and there are a number of instances where the law cannot be applied constitutionally. *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 108 S. Ct. 2225, 2234, 101 L. Ed. 2d 1 (1988) (citing *Broadrick*, 413 U.S. 601).

¶27. Wilcher fails to do so. Accordingly, we decline to address a First Amendment overbreadth claim.

¶28. As to Wilcher's unconstitutional-vagueness claim, we reiterate that the power to create and define criminal offenses rests exclusively within the authority of the Legislature. *State v. Russell*, 358 So. 2d 409, 411 (Miss. 1978). The Legislature has the power to define and punish any act as criminal unless limited by constitutional provisions. *Brawner v. State*, 947 So. 2d 254, 268 (Miss. 2006). This Court will not strike down a statute on constitutional grounds unless it appears beyond all reasonable doubt the statute violates the Constitution. *James v. State*, 731 So. 2d 1135, 1136 (Miss. 1999). The party challenging the statute's constitutionality bears the burden of proving its unconstitutionality. *Jones v. State*, 710 So. 2d 870, 877 (Miss. 1998). And even if the party succeeds, it is this Court's duty to uphold the statute, if possible, by placing a reasonable construction on it which would render it constitutional. *Thompson v. Box*, 147 Miss. 1, 112 So. 597, 599 (1927).

¶29. Due process requires a reasonable degree of certainty in legislation. *Cline v. Frink Dairy Co.*, 274 U.S. 445, 463-64, 47 S. Ct. 681, 71 L. Ed. 1146 (1927). This Court has spoken to vagueness issues in a number of contexts and has said that all due process requires

9

is that "the law give sufficient warning that [people] may conform their conduct so as to avoid that which is forbidden." *State v. Mays*, 329 So. 2d 65, 66 (Miss. 1976). A statute that either forbids or requires the doing of an act in terms so vague that persons of "common intelligence must guess at its meaning and differ as to its application violates the first essential of due process." *State v. Roderick*, 704 So. 2d 49, 53 (Miss. 1997) (quoting *Meeks v. Tallahatchie Cty.*, 513 So. 2d 563 (Miss. 1987)). "Likewise, a statute so indefinite that it 'encourages arbitrary and erratic arrests and convictions' is void for vagueness." *Roberston v. State*, 501 So. 2d 398, 400 (Miss. 1987) (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S. Ct. 839, 843, 31 L. Ed. 2d 110, 115 (1972)).

¶30. Section 97-9-127 is a fairly new statute,[2] contained in the obstruction-of-justice chapter in Mississippi's criminal code. By its elements, a person commits the offense of retaliation if he or she (1) intentionally or knowingly; (2) harms or threatens to harm another; (3) by an unlawful act; (4) in retaliation for anything lawfully done; (5) in the capacity of public servant, witness, prospective witness or informant. Miss. Code Ann. § 97-9-127.

¶31. The term "harm" as used in Section 97-9-127 is defined in the same chapter by Section 97-9-101(d), as follows:

> "Harm" means, loss, disadvantage or injury, or anything so regarded by the person affected, including loss, disadvantage or injury to any other person or entity in whose welfare he is interested.

Miss. Code Ann. § 97-9-101(d).

---

[2] *See* Miss. Code Ann. § 97-9-127 (Rev. 2014) (enacted in 2006).

¶32. While broad, this definition is not vague. Each word and phrase that comprises it is readily understandable to any reasonable person of ordinary intelligence. Indeed, Wilcher does not actually argue otherwise. Rather, Wilcher contends that the term "harm" should be limited to more tangible interests, such as physical harm, which was at issue in *Young*, or pecuniary harm such as loss of income or employment, which Deputy Townsend did not suffer.

¶33. Certainly, the Legislature could have limited this definition to such types of harm by expressly delineating its intentions, but it did not do so. And we find that the term "harm" as used in the retaliation statute encompasses more than just physical or pecuniary harm.

¶34. Texas, which has a retaliation statute very similar to Mississippi's (see Tex. Penal Code Ann. § 36.06), likewise defines the term "harm" as used in its retaliation statute as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person is interested." *See id.* at § 1.07(a)(25). Texas courts have held that this definition does not require that the harm contemplated be pecuniary or physical. *Halay v. State*, 2008 WL 5424095 (Tex. App.-Austin Dec. 31, 2008). Emotional harm, aggravation, and even loss of time have been held to constitute loss, disadvantage, or injury under this definition. *Taylor v. State*, 2012 WL 955383, *7 (Tex. App.-Fort Worth Mar. 22, 2012.)

¶35. While we have found no Texas case that addresses whether its definition encompasses reputational harm, we are certain Section 97-9-101(d) contemplates it.

11

¶36. Again, Wilcher acknowledges that such harm is perceivable and cognizable and may be remedied by a civil cause of action. But Wilcher contends it should be dealt with by civil remedy only, not criminal sanctions. However, Wilcher fails to explain why.

¶37. If the Legislature deems it necessary to protect against such harm by criminalizing certain conduct likely to cause it, the Legislature has the power to do so, as long as the law does not run afoul of constitutional protections. *Brawner*, 947 So. 2d at 268; *see also* ***Brecht v. Abrahamson***, 507 U.S. 619, 635, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) ("The States' core police-powers have always included authority to define criminal law and to protect the health, safety and welfare of their citizens.").

¶38. While the retaliation statute provides for a liberal definition of "harm," it cannot be said the statute as a whole is either vague, or too overly broad or indefinite so as to encourage arbitrary and erratic arrests and convictions. The statute's first element is a scienter requirement, which applies to every other element in the statute and narrows the statute's applicability considerably. Its applicability is narrowed even further by the statue's third element, which requires that the harm caused or threatened must be by an unlawful act. Mississippi Code Section 97-35-47 makes it a criminal offense in Mississippi to report a crime to any law enforcement agency or any officer of any court "knowing that such report is false."

¶39. The dissent, however, finds the statutory definition of "harm" is unconstitutionally vague because the language contained therein which says that harm is "anything . . . regarded [as a loss, disadvantage or injury] by the person affected," is completely subjective and relies

12

solely on the sensibilities of the alleged victim. Thus, the statute fails to provide any indication as to what sort of conduct is to be proscribed and provides no standards to law enforcement officials, which allows enforcement of the statute to be based upon whims or personal predilections. The dissent cites *Nichols v. City of Gulfport*, 589 So. 2d 1280 (Miss. 1991), in which this Court said, "[a] statute is unconstitutionally vague when the standard of conduct it specifies is dependent upon the individualized sensitivity of each complainant[,]" and noted that "penalties of the law cannot rest upon subjective guidelines[.]" *Nichols*, 589 So. 2d at 1284.

¶40.    Respectfully, the dissent's reliance on *Nichols* is misplaced. First, the question there concerned an antinoise ordinance passed by the City of Gulfport, the regulation of which the *Nichols* Court recognized "poses special problems of draftsmanship and enforcement" because "[t]he nature of sound makes resort to broadly stated definitions and prohibitions not only common but difficult to avoid." *Id*. at 1283 (quoting *People v. New York Trap Rock Corp.*, 442 N.E.2d 1222, 1226 (1982)). In *Nichols*, "Section 1" of the Gulfport ordinance prohibited the making of "unnecessary or unusual noises" which either "annoys, injures or endangers the comfort, repose, health or safety of others." As noted by the dissent, *Nichols* found the words "unnecessary," "unusual," and "annoying" as contained in the ordinance unconstitutionally vague because the words themselves are "inherently vague and elastic and require men of common intelligence to guess at their meaning." *Id*. at 1283. The *Nichols* Court said it could find "no setting here from which these three vague words could take on a reasonable degree of definitiveness." *Id*. "If beauty is in the eye of the beholder, whether

13

a noise is 'unnecessary,' 'unusual' or 'annoying' certainly depends upon the ear of the listener." *Id*. at 1284. But *Nichols* qualified its holding, stating:

> In finding that Section 1[] of Gulfport's noise control ordinance is unconstitutionally vague, we are by no means condoning interference with the tranquility and inviolability of one's home by loud noise. We are simply persuaded that Section 1[] can be more clearly worded and more narrowly drawn while still achieving the legitimate objectives of the municipality in the protection of its citizens from noises which may affect their comfort, repose, health or safety.

*Id*. at 1284.

¶41. Unlike the words found in the Gulfport ordinance, the word, "loss, disadvantage or injury" are not inherently vague and elastic so as to require guesswork at their meaning. Each is a quantifiable concept that does not readily lend itself to the whims or personal predilections of reasonable people. Indeed, other states provide the same definition of "harm" in their respective criminal codes.[3]

¶42. Second, the fact that this definition contains a subjective element does not render it unconstitutionally vague. Numerous offenses throughout our criminal code are comprised of subjective elements. Robbery, for example, consists of the application of *fear* to obtain property of another. *See, e.g.*, *Clayton v. State*, 759 So. 2d 1169, 1170-71 (Miss. 1999) (reversing defendant's robbery conviction because State failed to prove theft was "effectuated through fear of immediate injury to the victim"). The reason for the subjective

---

[3] Delaware, in its definitions relating to bribery and improper influence, defines "harm" to mean "loss, disadvantage or injury, or anything so regarded by the person affected, including loss, disadvantage or injury to any other person in whose welfare the person is interested." Del. Code § 1209(1); *see also* Haw. Rev. Stat. § 710-1000 (same); Ind. Code 35-31.5-2-149 (same); Mont. Code Ann. 45-2-101(27) (same); N.J.S.A. 2C:27-1(c) (same); 18 Pa. Stat. and Cons. Stat. Ann. § 4501 (same).

component to the "harm" definition is that what might be considered a loss, disadvantage, or injury for one person, might not be so considered by another. Implicit in the "harm" definition here is *reasonableness*; meaning whether the loss, disadvantage, or injury as regarded by the victim was reasonable under the circumstances. The terms loss, disadvantage, or injury–and the victim's regard thereof–each can be considered objectively under a reasonable-person standard. The terms "unnecessary," "unusual," or "annoying," as used in the Gulfport ordinance at issue in *Nichols*, could not, according to the *Nichols* Court.

¶43. The dissent contends that we are redrafting the Legislature's definition of harm by "adding the word 'reasonable' into the statute in an attempt to render it constitutional." Not so. We are simply looking at the Legislature's intent.

¶44. "The purpose and object of all construction of legislative acts is to get at the intent and purpose of the Legislature." *Bobo v. Board of Levee Comm'rs for Yazoo-Mississippi Delta*, 92 Miss. 792, 46 So. 819 (1908). While "the general rule is that penal statutes must be strictly construed[,]" courts also are "required to take a reasonable and common-sense view of the evil at which a statute is directed and the protection which it is designed to afford, and when these are within the letter of the statute, the enactment is to be construed in accordance with its purpose, although its letter would admit a narrower interpretation." *Nelson v. City of Natchez*, 197 Miss. 26, 19 So. 2d 747 (1944) (citing *Bobo*, 92 Miss. 792, 46 So. 819). In *Bobo*, this Court said, "[w]e do not think we have ever seen this principle more correctly and sanely stated than in the case of *Bryant v. United States*, 105 Fed. 941, [943 (5th Cir. 1901)], where the court said:

15

> While it is true that penal statutes should be strictly construed, it is undoubtedly the duty of the courts to look to the mischief intended to be prevented, and to take into consideration the character of the remedy proposed to be applied, in doing which the mere letter must yield to the manifest spirit, and give to the provisions that measure of restriction or expansion which a sound, reasonable reading of the whole requires of each particular.

*Bobo*, 46 So. at 823 (quoting *Bryant v. United States*, 105 Fed. 941, [943 (5th Cir 1901)]).

¶45.    Also, this Court explained in *State v. Ware*, that, while "[c]riminal statutes must be strictly construed, and the courts have no power to add to or take from them, . . . this does not mean that such statutes are to be construed with such technical strictness as to defeat the purpose of ascertaining the true meaning thereof." *State v. Ware*, 102 Miss. 634, 59 So. 854, 855 (1912) (quoting *State v. Traylor*, 100 Miss. 544, 56 So. 521 (1911) (Smith, J. dissenting)).

¶46.    The purpose behind Section 97-9-127 is to encourage individuals to perform public duties without fear of retribution.  Such services are vital to the essential operations of government, and the State has a compelling interest in protecting those individuals from harm in the performance of those services.  The Legislature, which is presumed to know the law, clearly did not intend to imperil this statute and its purpose constitutionally by deliberately excluding from the statute's accompanying "harm" definition an objective-reasonableness standard in favor of a "completely subjective" one.  An interpretation to the contrary by this Court would be unreasonable and unsound, particularly given the other (above-mentioned) necessary elements prescribed by Section 97-9-127, which obviously are intended to narrow the application of this statute.

¶47. Here, based on the aforementioned facts and Wilcher's accompanying argument(s), we do not find that the retaliation statute and the accompanying statutory "harm" definition will likely encourage arbitrary law enforcement or provide inadequate notice to potential offenders as to what conduct is prohibited. Accordingly, we find no merit in Wilcher's claim that Section 97-9-127 is unconstitutionally vague. This issue is without merit.

## II. Whether the State failed to prove that Deputy Townsend suffered actual harm.

¶48. Wilcher contends the State failed to prove its allegation that Deputy Townsend suffered actual harm to his professional reputation and standing as a law-enforcement officer. Wilcher maintains that Wilcher did not face work consequences; was never suspended or placed on leave from work; and never lost any wages or income. Thus, her retaliation conviction is based on insufficient evidence.

¶49. In deciding whether sufficient evidence was presented in support of a jury's guilty verdict, this Court must determine whether, when viewing the evidence in the light most favorable to the State, any rational juror could have found the State proved the required element or elements of the crime charged beyond a reasonable doubt. *Galloway v. State*, 122 So. 3d 614, 665 (Miss. 2013). "Under this inquiry, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Id*.

¶50. The record illustrates that the State presented sufficient evidence for the jury to conclude that Deputy Townsend did suffer actual harm to his reputation as a result of Wilcher's knowingly false accusation of rape. Deputy Townsend testified that Wilcher's

17

accusation was known throughout the community where he lived, and Deputy Townsend believed his professional reputation had been harmed as a result. Deputy Townsend's testimony alone was enough to create a question for the jury as to whether Deputy Townsend had suffered actual harm to his professional reputation and standing as a law-enforcement officer. As noted, "[h]arm means, loss, disadvantage or injury, *or anything so regarded by the person affected . . . .*" Miss. Code Ann. § 97-9-101(d) (emphasis added).

¶51. The record further illustrates that an investigation of Deputy Townsend ensued due to Wilcher's rape claim. This necessitated Deputy Townsend submitting to a blood test to negate the claim. In addition to the investigation, Wilcher called WLBT News and reported that she had been raped by a Scott County sheriff's deputy named Michael Townsend.

¶52. Given Section 97-9-101(d)'s definition of "harm" as used in the retaliation statute, the aforementioned evidence sufficed to create a jury question as to whether Deputy Townsend suffered harm to his professional reputation and standing as a law-enforcement officer. Accordingly, we find no merit in Wilcher's claim that her conviction for retaliation is based on insufficient evidence.

## CONCLUSION

¶53. For these reasons, we affirm the circuit court's judgment of conviction and sentence.

¶54. **CONVICTION OF RETALIATION AGAINST A PUBLIC SERVANT AND SENTENCE OF TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. APPELLANT SHALL PAY THE CLERK'S FILING AND PROCESS FEES IN MONTHLY INSTALLMENTS OF $150 WITH THE FIRST PAYMENT DUE NINETY (90) DAYS FOLLOWING RELEASE FROM CONFINEMENT.**

**WALLER, C.J., RANDOLPH, P.J., MAXWELL AND CHAMBERLIN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.; DICKINSON, P.J., AND COLEMAN, J., JOIN IN PART.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶55. Justice King correctly concludes that Mississippi Code Section 97-9-101 is unconstitutionally vague insofar as it includes a purely subjective standard—"anything so regarded by the person affected"—in its definition of harm. But I do not find this case is about subjective harm. Rather, I agree with the majority that Mississippi Code Section 97-9-101 and Mississippi Code Section 97-9-127 include reputational harm, and that sufficient evidence was produced to support the jury's verdict on that basis.

**COLEMAN, J., JOINS THIS OPINION**.

**KING, JUSTICE, DISSENTING:**

¶56. While I agree that, under certain circumstances, the "harm" contemplated by Section 97-9-127 may include reputational harm, I believe that the statute at issue is unconstitutionally vague and that the State failed to present sufficient evidence to prove the element of "harm" in this case. I therefore respectfully dissent.

¶57. Section 97-9-127 provides that retaliation against a public servant or witness is committed if a person "intentionally or knowingly harms or threatens to harm another by any unlawful act in retaliation for anything lawfully done in the capacity of public servant, witness, prospective witness or informant." Miss. Code Ann. § 97-9-127 (Rev. 2014). "Harm" is defined as "loss, disadvantage or injury, or anything so regarded by the person

19

affected, including loss, disadvantage or injury to any other person or entity in whose welfare he is interested." Miss. Code Ann. 97-9-101(d) (Rev. 2014).

¶58. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). While "[i]mpossible standards of specificity are not required[,]" the statutory language must convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. De George*, 341 U.S. 223, 231-32, 71 S. Ct. 703, 95 L. Ed. 886 (1951). However, without minimal guidelines for law enforcement, "a criminal statute may permit a 'standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender*, 461 U.S. at 357. Furthermore, this Court recognizes, in the context of a void-for-vagueness analysis, that where a statute, by its terms, is applicable to speech and thus "is capable of reaching First Amendment rights, the statute . . . should be subjected to heightened scrutiny." *Nichols v. City of Gulfport*, 589 So. 2d 1280, 1283 (Miss. 1991)[4]; *see also Keyishian v. Bd. of Regents*, 385 U.S. 589, 604, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967).

¶59. The statutory definition of harm in this case is unconstitutionally vague. It includes "loss, disadvantage or injury, or *anything so regarded by the person affected*." And the

---

[4]I agree with the majority that Wilcher did not properly assert a direct facial challenge to the statute based solely on First Amendment grounds. However, that does not prevent this Court from considering in the context of a void-for-vagueness analysis that the statute is capable of infringing on First Amendment rights.

20

majority relies on the "anything so regarded by the person affected" definition of harm in this case. "A statute is unconstitutionally vague when the standard of conduct it specifies is dependent upon the individualized sensitivity of each complainant." *Nichols*, 589 So. 2d at 1284. In *Nichols*, this Court found that the words "unnecessary," "unusual," or "annoying" in a noise ordinance were unconstitutionally vague. *Id.* The Court noted that "[t]he penalities of the law cannot rest upon subjective guidelines[.]" *Id.* The portion of the definition of harm in Section 97-9-101(d) stating that harm is "anything . . . regarded [as a loss, disadvantage or injury] by the person affected" is completely subjective and relies solely on the sensibilities of the alleged victim in a case. It gives absolutely no indication as to what sort of conduct is to be proscribed. Indeed, the majority says it well, admitting that "what might be considered a loss, disadvantage or injury for one person, might not be so considered by another" and adding the word "reasonable" into the statute in an attempt to render it constitutional. Maj. Op. ¶ 43. Yet, it is the province of the Legislature, not the courts, to draft statutes, and the plain language of this statute is unambiguous in its broad nature.[5] Nor does the definition of harm give any guidance whatsoever to law enforcement officers,

---

[5]"The courts have no right to add anything to or take anything from a statute, where the language is plain and unambiguous. To do so would be intrenching on the power of the Legislature." *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1208 (Miss. 2002) (quoting *Hamner v. Yazoo Delta Lumber Co.*, 56 So. 466, 490 (Miss. 1911)). Moreover, the courts have no "authority to write into the statute something which the Legislature did not itself write therein, nor can they ingraft upon it any exception not done by the lawmaking department of the government." *Id.*

21

subjecting enforcement of the statute to the risk of enforcement based upon whims or personal predilections.[6]

¶60.    In addition to the statute being unconstitutionally vague, insufficient evidence was adduced that Deputy Townsend suffered any harm.  Deputy Townsend testified that it had become known in the community that Wilcher had made these allegations because he heard "people just talking" for "probably a good week."  Yet, this is not evidence sufficient of harm, reputational or otherwise.  Deputy Townsend never testified as to what people were saying or that the allegations had harmed him or his reputation in some way.  Indeed, for all this Court knows, people could have been saying "that Wilcher lady made crazy allegations against Deputy Townsend.  Poor Deputy Townsend, we know they are false."  The State in no way demonstrated that any of the "talk" was in any way negative with regard to Deputy Townsend.  "Talk," which the State failed to adduce was even negative talk with regard to Deputy Townsend, is simply not sufficient evidence of the element of "harm," reputational or otherwise.

---

[6]The majority attempts to equate the complete subjectivity of the definition of harm with the slight subjectivity encased in the robbery statute.  The robbery statute proscribes a taking "by putting such person in fear of some immediate injury to his person."  Miss. Code Ann. § 97-3-73 (Rev. 2014).  "Fear" is defined as "[t]he strong, negative feeling that a person experiences when anticipating danger or harm."  *Fear*, Black's Law Dictionary (10th ed. 2014).  While a slight subjective component may be inherent in the word fear, the definition is not dependent completely on the sensibilities of the victim.  Such a definition may lend itself to a finding that an ordinary person would understand what conduct is proscribed, in other words, an ordinary person can generally understand how not to place another person in fear of immediate injury to the person.  The same cannot be said for the guessing game inherent in determining what another person regards as loss, disadvantage, or injury.

¶61.    Because the statutory definition of harm is unconstitutionally vague, and because the State also failed to introduce sufficient evidence of harm, I believe that Wilcher's conviction should be reversed and rendered, and I therefore respectfully dissent.

**KITCHENS, J., JOINS THIS OPINION. DICKINSON, P. J., AND COLEMAN, J., JOIN THIS OPINION IN PART.**